# Commonwealth *v.* Klein, Appellant.

*Criminal law—Grand jury—Investigation of bribery—Action of court on its own motion—Witnesses—Subpœna.*

1. A criminal court may of its own motion, or at the suggestion of the district attorney, direct the grand jury to investigate charges of bribery and corrupt solicitation, and direct that subpœnas may issue to witnesses to testify in behalf of the commonwealth in such an investigation.

2. In such a case a subpœna is sufficient which commands the witness to appear before the grand jury at a specified hour, day and place "to testify all and singular those things which you shall know in a certain investigation of charges of bribery and corrupt solicitation of councilmen in the city of Pittsburgh in our said court depending, and then and there to be tried between the commonwealth and a person or persons unknown:" Hartranft's App., 85 Pa. 433, distinguished.

3. A witness summoned under such a subpœna cannot refuse to go before the grand jury on the ground that he cannot be compelled to criminate himself. He is bound to obey the summons, and if at the investigation he is asked a question which violates his constitutional rights, he may then refuse to answer and have the question touching his rights as a witness disposed of in a legal and orderly manner.

4. Where in such a proceeding the witness refuses to appear he may be both fined and imprisoned for contempt.

Argued April 19, 1909. Appeal, No. 188, April T., 1909, by defendant, from order of Q. S. Allegheny Co., March T., 1909, No. 23, imposing fine and imprisonment for contempt of court in case of Commonwealth v. John F. Klein. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Attachment for contempt. Before DAVIS, P. J.

From the record it appeared that on March 12, 1909, the following suggestion was made to the court of quarter sessions:

W. A. Blakeley, district attorney of Allegheny county, respectfully represents:

1. That at the February Sessions, 1909, of the court of quarter sessions of Allegheny county, certain indictments were tried, charging the defendants, inter alia, with bribery, corrupt solicitation and conspiracy to defraud the city of Pittsburg.

That these trials resulted in the conviction of W. W. Ramsey of corrupt solicitation and bribery, and John F. Klein of bribery, and John F. Klein, William Brand and J. C. Wasson of conspiracy, and a plea of nolle contendere to the crime of corrupt solicitation and bribery was entered by one A. A. Vilsack.

2. That at the trial of said causes, the testimony indicated that money had been paid by banks in the city of Pittsburg, in addition to the bank named in said indictments, for their selection as city depositories, and that open and extensive bribery and corruption had been practiced in the passage of the ordinance relating to the selection of bank depositories, as well as ordinances relating to many other matters which had been before and received the consideration of council. That testimony was also given to indicate that in and about the influencing of members of council to obtain their vote for the passage of the bank depository ordinance, moneys, in various amounts, were paid to eighty-eight councilmen, and further, that other moneys were paid to councilmen for their votes and support of a certain filtration deal.

3. That it has been publicly asserted in the public prints of the city of Pittsburg and elsewhere, that bribery had been resorted to in securing the passage of ordinances vacating streets in said city, to wit: ordinance relating to the vacation of South Seventh street, the vacation of Home street, the vacation of Auburn street, the exoneration of certain persons from sewer assessment, of water rents, the vacation of land on the north side of Rose street, the purchase from Chas. O. Lappe of certain property, and the passage of two ordinances providing for the improvements of Rose street.

4. It has further been publicly asserted and is common talk upon the streets and in business houses in said city that bribery and corruption was used to secure the passage of divers other ordinances and to prevent the passage of divers other ordinances.

5. That the mayor of the city of Pittsburg, Honorable George W. Guthrie, has publicly asserted that he is in possession of evidence relating to councilmanic graft and corruption in the city of Pittsburg.

6. That the district attorney of Allegheny county has no power to summon witnesses before the grand jury, or to investigate the same by placing witnesses in possession of information in regard to said alleged bribery and corruption, under oath, nor has he legal authority to submit the matters to the grand jury for their investigation, the said matters pointing to general corruption and bribery and not to the guilt of any one particular person.

7. That the said W. A. Blakeley, district attorney, believes the above matters are public notoriety and are of such a nature, if true, as to affect the body corporate at large rather than any individual, and recognizing his inability under the law to satisfactorily and thoroughly investigate the said public matters, he deems it his duty to submit this suggestion to the court in order that the court, if convinced that the matter is of public notoriety and import and affects the public rather than the individual, may make such order in the premises with reference to submitting the matter to the grand jury as to it shall seem best and proper, both under the circumstances and the law.

The court made the following offer:

And now, to wit: March 12, 1909, the within petition presented in open court and upon due consideration thereof, it is ordered and directed that the said petition or suggestions be filed, and the district attorney be authorized to proceed with the investigation prayed for, and also be empowered to issue such subpœnas or processes as may be necessary to compel and procure the attendance of such witnesses who may in the judgment of the district attorney be competent to give evidence relevant to matters under investigation.

Subsequently the following subpœna was issued and served on John F. Klein:

"Allegheny County, ss: Harry M. Merit.

"The Commonwealth of Pennsylvania. To Wm. Velte, G. W. Heppenstall, Harry P. Dilworth and John F. Klein, greeting:

"We command you, that laying aside all business and excuses whatsoever, you and each of you be and appear in your proper person before our Grand Jury, at Pittsburg, there to be

held for the county aforesaid forthwith on the 16th day of March, A. D. 1909, at 9:30 o'clock A. M., to testify all and singular those things which you shall know in a certain investigation of charges of bribery and corrupt solicitation of councilmen in the City of Pittsburg in our said Court depending, and then and there to be tried between the Commonwealth and a person or persons unknown, defendant on the part of the Commonwealth. And herein fail not, under the penalty of one hundred pounds.''

Klein refused to appear before the grand jury on the ground apparently that he was not obliged to testify to matters which would incriminate himself. An attachment was issued against him, and he was adjudged guilty of contempt of court and sentenced to pay a fine of $100, and undergo an imprisonment of thirty days.

Subsequently on a writ of habeas corpus from the Superior Court, Klein was permitted to enter bail in the sum of $2,500, pending the hearing of the appeal.

*Errors assigned* were the issuance of the subpœna, the issuance of the attachment, the conviction for contempt, and the sentence to fine and imprisonment.

*Marron & McGirr* and *John S. Robb, Jr.*, for appellant.— The lower court was without jurisdiction to summon appellant to appear before the grand jury then inquiring in the county of Allegheny for the purpose of compelling him to testify to bribery and solicitation of bribery, and that the inquiry then being made by the grand jury was not a "lawful investigation or judicial proceeding" under sec. 32, art. III, of the constitution of Pennsylvania.

The subpœna in this case was not lawful: Hartranft's App., 85 Pa. 433; Com. v. Smith, 185 Pa. 553.

The court had no jurisdiction to fine and commit.

*Warren I. Seymour*, with him *William A. Blakeley* and *Robert T. McElroy*, for appellee.—The court of quarter sessions had jurisdiction of the subject-matter.

Appellant was guilty of contempt of court in refusing to appear before the grand jury: Lloyd & Carpenter's Case, 3 Clark, 188; Com. v. Dietrich, 7 Pa. Superior Ct. 515; Com. v. Hurd, 177 Pa. 481; Com. v. Smith, 185 Pa. 553.

The subpœna was a proper subpœna: Hale v. Henkel, 201 U. S. 43; O'Hair v. People, 32 Ill. App. 277; Feree v. Strome, 1 Yeates, 303; Com. v. Bell, 145 Pa. 374; Com. v. Roberts, 2 Clark, 340; Kelley's Election Case, 200 Pa. 430.

The sentence in this case was proper: Com. v. Perkins, 124 Pa. 36; Williamson's Case, 26 Pa. 9.

OPINION BY RICE, P. J., July 14, 1909:

1. After describing the ordinary mode of instituting criminal proceedings, namely, by warrant of arrest founded on probable cause, supported by oath or affirmation, followed by a hearing before a committing magistrate, Judge King said: "It is the fitness and propriety of the ordinary mode of criminal procedure, its equal justice to accuser and accused, that render it of almost universal application in our own criminal courts and make it unwise to depart from it, except in special circumstances, or pressing emergencies:" Lloyd's Case, 3 Clark 188. This statement of the general rule recognizes the possibility of special circumstances or pressing emergencies which will justify resort to one or the other of the extraordinary modes of criminal procedure which Judge KING then went on to describe: "The first of these is where criminal courts of their own motion call the attention of grand juries to and direct the investigation of matters of general public import, which, from their nature and operation in the entire community, justify such intervention. The action of the courts on such occasions, rather bears on things than persons, the object being the suppression of general and public evils, affecting, in their influence and operation, communities rather than individuals, and, therefore, more properly the subject of general than special complaint; such as great riots that shake the social fabric, carrying terror and dismay among the citizens; general nuisances affecting the public health and comfort; multiplied and flagrant vices tending to debauch and corrupt

the public morals and the like. In such cases the court may properly, in aid of inquiries directed by them, summon, swear" (the oath may now be administered by the foreman of the grand jury) "and send before the grand jury, such witnesses as they may deem necessary to a full investigation of the evils intimated, in order to enable the grand jury to present the offense and offender." This extraordinary power is to be exercised sparingly, with great caution and only when special circumstances or pressing emergencies require it for the suppression of general and public evils, affecting in their influence and operation communities rather than individuals. It is nevertheless apparent from the foregoing statement of the rule, as well as from the cases in which the exercise of the power has been held not to be an abuse of the sound judicial discretion vested in the criminal courts, that the power is not confined to cases of great riots or general public nuisances, but extends to the investigation and suppression of such general public evils as were given in charge to the grand jury in the present case. The nature of the subject of the investigation, and the special circumstances which moved the court to order it are sufficiently set forth in the suggestion filed by the district attorney, the order of the court thereon and the return of the grand jury, and need not be enumerated here. It is enough to say that the occasion for the exercise of this extraordinary power was much more urgent than in Com. v. Hurd, 177 Pa. 481, and was equally as plain as in Com. v. Dietrich, 7 Pa. Superior Ct. 515, in each of which cases the action of the court was sustained. We conclude, therefore, that the proceeding in which the defendant was called to testify was a lawful proceeding.

2. The subpœna served on the defendant commanded him to appear before the grand jury at a specified hour, day and place "to testify all and singular those things which you shall know in a certain investigation of charges of bribery and corrupt solicitation of councilmen in the city of Pittsburg in our said court depending, and then and there to be tried between the commonwealth and a person or persons unknown, defendant on the part of the commonwealth. And herein fail not under

the penalty of one hundred pounds." We cannot agree with counsel for appellant that the same defects appear in this subpœna as in the subpœna referred to in Hartranft's Appeal, 85 Pa. 433. The defect or defects in the subpœna in that case were thus pointed out by Justice GORDON: "It sets forth no case, present or prospective, nor does it state for whom, or at whose instance, the defendants were to be subpœnaed. As this writ is a very arbitrary one, obliging the citizen to leave his home and abandon his business, however important it may be, and give his attendance at court, wherever that may be sitting, it is very important to know what parties are entitled to it; for if it be issued at the suit of one having no right thereto, it is no contempt to disobey it. The commonwealth may have this process in any proceeding where its interest is apparent, whether as a suitor or a prosecutor, and so may parties in courts, either civil or criminal; but we have yet to learn that any such right exists in a court, in its mere character as a court, separated from the case which it has in hand. So this, as well as every other compulsory process, must show upon its face that it was issued for some person or party having a right thereto, otherwise it is nugatory and void, and disobedience to its mandate involves no penalty whatever. In the case before us, there was the use of the writ of subpœna, as a mere order of the court, without statement of party or case, commanding the defendants to appear before the grand jury, for the purpose of giving their testimony touching the late riots." In the same connection Justice GORDON said that no doubt the court might have directed a subpœna to issue for the commonwealth in any case where the commonwealth was a party, "or where it was apparent it was in some way interested in some case or transaction then depending." Here the case or proceeding in which the defendant was to testify was set forth in the subpœna as clearly as from its nature was possible; it is apparent on the face of the subpœna that if the commonwealth was not technically a party against a named defendant, it was a party against the unknown persons the investigation was intended to discover, or, to say the least, was vitally interested in the matter then depending; and it is also apparent

that the appellant was to testify in behalf of the commonwealth in that investigation. We entertain no doubt that it was a lawful subpœna and that he was not at liberty to disobey it because of any supposed defects of form.

3. We are not disposed to go into an elaborate discussion of the question whether under the circumstances set forth in the appellant's petition to quash the attachment he could claim the privilege to refuse to answer questions that might incriminate him, because the time for claiming that privilege, if he had it, had not arrived. He refused to go before the grand jury to testify to any matter, and it is apparent that he might have been asked questions the answers to which would not have affected him prejudicially in any way. In Eckstein's Petition, Yard's Appeal, 148 Pa. 509, it was held, that under the provisions of the act of June 1, 1885, each branch of councils in cities of the first class was given power to compel the attendance of witnesses, and that upon the issuing of a subpœna it was the duty of the person summoned to appear in reponse to the summons and be sworn as a witness, and that he could not refuse to appear and be sworn on the ground that he was already under indictment for alleged criminal connection with the matters which the committee proposed to investigate and that the answers to questions propounded to him might tend to prejudice him in the criminal proceedings then pending. The court said: "The investigation which was in progress before the councils was a lawful investigation. The subpœna was lawfully issued, and it was his duty to obey it. Upon his refusal to do so, it was lawful for the court of common pleas to compel such obedience. It cannot be tolerated for a moment that a man may be allowed to disobey a lawful subpœna upon his mere opinion that the subpœna had been improperly issued, or that the particular tribunal before which he was summoned to appear has no jurisdiction to proceed. It was time enough for the appellant to have raised any objection after he had obeyed the subpœna, and been sworn as a witness. If a question had then been asked which tended to criminate him, or which was in violation of any of his rights as a citizen, under the constitution and laws of this commonwealth, he could have de-

clined to answer the same, and any question touching his rights as a witness could have been disposed of in a legal and orderly manner." Having determined that the proceeding in which the appellant was summoned and subsequently directed to testify was a lawful proceeding, and that the process was lawful, the same principle is applicable here.

4. The suggestion that the contempt of the appellant was only punishable by fine, cannot be sustained. In Com. v. Gibbons, 9 Pa. Superior Ct. 527, affirmed in Kelly's Contested Election, 200 Pa. 430, it was held that where a person refused to answer questions propounded to him by examiners in a contested election, and appeared in open court and made answer to a rule to show cause why he should not be attached for contempt, and, in his answer, refused to obey an order which had been made upon him to appear before the examiners and answer the questions, the offense was committed in open court. This would seem to be conclusive of the question before us. See also as to punishment by imprisonment Com. v. Bell, 145 Pa. 374, and Com. v. Perkins, 124 Pa. 36.

The judgment is affirmed and the record is remitted to the court of quarter sessions of Allegheny county to the end that the sentence be fully carried into effect.