## Commonwealth v. Zavaglia.

C. A. Snyder, District Attorney (with him R. A. Freiler and James J. Gallagher, his assistants), for Commonwealth.

Cyrus M. Palmer and M. M. Burke, for defendant.

HICKS, J., June 17, 1929.—On March 9, 1929, the court charged the grand jury, then engaged in the March Sessions, with the duty of investigating the circumstances and conditions surrounding the escape from the Schuylkill County prison of Elverez Miquel, a condemned murderer. On March 21, 1929, the grand jury reported to the court the result of its investigations, and presented for indictment the defendant, Dominick Zavaglia, and recommended to the court that the district attorney be directed to prepare and present bills of indictment to the grand jury against the said defendant, among others, covering the alleged criminal conduct fully set forth in said report. The court, upon motion of the district attorney, who had prepared a bill of indictment in conformity to the report of the grand jury and in pursuance thereof, directed the submission of a bill of indictment against the defendant to the same grand jury. Upon the bill of indictment, the court made the following order: "And now, March 21, 1929, upon report made by the Grand Inquest of the March Sessions, specially directed by the court to investigate and report to the Court on the escape of Alverez Miquel, a prisoner lawfully committed to the Schuylkill County Prison, it is ordered and directed that the within bill of indictment be submitted to the Grand Inquest at the March Sessions, 1929." On the back of the bill of indictment was endorsed the words: "By the Court . . . prosecutor." Later on the same day, the grand jury returned a true bill against the defendant.

It was conceded, both in written and oral arguments by the district attorney and counsel for the defendant, that the presentment was based upon the testimony of witnesses heard by the grand jury, and sworn by its foreman; also, that no witnesses were called before the grand jury to support the bill

of indictment, that names of witnesses were not written upon it, and that the indictment was found and based upon the presentment, by the same grand jury which had made the investigation.

The reasons upon which the defendant relies to quash the bill of indictment are as follows: (1) No prosecutor's name is endorsed on the said bill of indictment; (2) no names of any witnesses examined to sustain it are endorsed on said bill of indictment; (3) the presentment from which the indictment was found was not made according to law, in that no witnesses were legally sworn before giving their testimony, upon which testimony the grand jury made the said presentment.

(1) The first reason, that no prosecutor's name is endorsed on the indictment, is wholly without merit. This indictment was submitted to the grand jury by the district attorney, with the approval of the court, in pursuance of an investigation made by the grand jury at the request of the court. There was no prosecutor and, therefore, the name could not be endorsed thereon. It is sufficient to refer to section 27 of the Act of March 31, 1860, P. L. 437, which provides: "No person shall be required to answer to any indictment or any offense whatever, unless the prosecutor's name, if any there be, is endorsed thereon; and if no person shall avow himself the prosecutor, the court may hear witnesses and determine whether there is such a private prosecutor, and if they shall be of opinion that there is such a prosecutor, then direct his name to be endorsed on such indictment." This section is taken from one of the clauses of the Act of 1705, 1 Sm. Laws, 56. The old law has been so amended as to enable the court to determine the question, in any case, whether there is such a prosecutor, and who he is, and, if any, to order his name to be endorsed on the indictment. If there be no proof of a prosecutor, the defendant must plead without such endorsement: Rex v. Lukens, 1 Dall. 5 (1762). See, also, Com. v. Bethlehem Borough, 15 Pa. Superior Ct. 158, 164; Com. v. Hurd, 177 Pa. 481; McCullough v. Com., 67 Pa. 30; Com. v. Green, 126 Pa. 531.

(2 and 3) The second and third reasons will be considered together. The basis of these reasons is the fact that witnesses who appeared before the grand jury during its investigation were sworn by the foreman of the grand jury and not in open court by a judge.

It is urged by the defendant, since the names of the witnesses do not appear upon the indictment, that no member of the jury could administer the oath to the witnesses appearing before it, and, therefore, not having been legally sworn, the presentment, as the foundation of the bill of indictment, was found upon incompetent testimony or no testimony at all recognizable in the law, and that, therefore, the indictment must be quashed. This contention is based upon the provisions of section 10 of the Act of March 31, 1860, P. L. 427, which is as follows: "The foreman of any grand jury, or any member thereof, is hereby authorized and empowered to administer the requisite oaths or affirmations to any witness whose name may be marked by the district attorney on the bill of indictment." The defendant contends that no member of the grand jury has any authority to administer an oath except to a witness whose name is marked upon the bill of indictment, and, therefore, the witnesses not having been sworn in open court, the indictment should be quashed. This exact question has never been decided by any of our appellate courts, although there are a number of county court cases in point, but which are not in harmony in the conclusions reached.

For cases sustaining the view that if a witness whose name is not marked on the bill of indictment, and who was not sworn before the court, testifies

before the grand jury, the indictment will be quashed, see Com. *v.* Wilson, 9 Pa. C. C. Reps. 24; Com. *v.* Tomli, 21 Dist. R. 1016; and Com. *v.* Bayley, 18 Dist. R. 909. In the case of Com. *v.* Wilson, *supra,* President Judge Rice, of the Superior Court, wrote the opinion when he was President Judge of the Quarter Sessions Court of Luzerne County in 1889. We refer to this case particularly because we desire to refer to two other opinions of this same judge when he was a member of the Superior Court. In this case, a witness's name was not marked on the bill of indictment and he was sworn by the foreman of the grand jury before delivering his testimony. President Judge Rice, in holding that if a witness whose name is not marked on the bill, and who was not sworn before the court, testifies before the grand jury, the indictment will be quashed, referred to the 10th section of the Act of March 31, 1860, P. L. 427, and then added: "We may assume, from what was said on the argument, that the witness was sworn by the foreman or some member of the grand jury, but if the grand jury had no authority to administer the oath, their action was as irregular as if they had examined witnesses without swearing them, which has been held sufficient ground for quashing the indictment. See Com. *v.* Leisenring, 2 Pears. 466, and cases cited. In the case of Com. *v.* Morrison, No. 48, April Sessions, 1883, Judge Woodward quashed the indictment for precisely the same reason as assigned in this case. Judge Sittser made the same ruling in Com. *v.* Price, 3 Pa. C. C. Reps. 175." He thus interpreted the Act of 1860, § 10, *supra,* as restricting the authority of members of the grand jury to swear witnesses appearing before them to those whose names appeared upon the bill of indictment.

The defendant also relies upon the case of Com. *v.* Edmiston, 30 Pa. Superior Ct. 54, as supporting the view just referred to. In that case, the defendants were charged in a bill of indictment with violations of the Act of March 31, 1860, P. L. 382, relative to gambling, and a motion to quash the indictment, which was denied, upon the ground that a witness whose name was not marked on the back of the indictment was called before the grand jury and sworn by the foreman, was the single matter assigned for error in the higher court. President Judge Rice, of the Superior Court, in passing upon the motion to quash, stated that "to warrant us in reversing the action of the court below, it ought to be made to appear affirmatively, or by necessary implication, not only that the indictment was found a true bill upon the testimony of a witness whose name was not endorsed thereon, but that he was not sworn before the court." Then, after explaining that an examination of the bill of exceptions showed that this latter fact was not expressly stated and was not necessarily to be implied from what was stated, the lower court was affirmed. And it is interesting to record the last two sentences of the opinion, in this connection, as follows: "For while we may surmise that the witness was not sworn before the court, yet we can do no more than surmise that fact from this record. The defendants, in view of all the circumstances to which we have alluded at the outset of this opinion, are not in a position to demand that we go outside the record, even if we had discretionary power to do so, which we have not." The opinion does not squarely decide the point and cannot be considered as authority either way in this case.

We are also referred by the defendant to the case of Com. *v.* Morris et al., 91 Pa. Superior Ct. 571, as supporting his contention. In that case, the defendants were indicted for conspiracy and were convicted. A motion to quash the indictment was made in the lower court, which was denied. In passing upon the denial of the motion to quash in the higher court, on page 574, the Superior Court declared that: "Manifestly, the gravamen of

the complaint is that the testimony of the witnesses whose names were endorsed upon the bill did not support the averments therein." It then stated the question for decision to be: "Whether a defendant has the right to allege, and attempt to prove, that the testimony given before a grand jury by witnesses legally competent to testify, whose names were duly endorsed upon the bill, was insufficient to make out a *prima facie* case." This was the only point for decision in the higher court, as far as the motion to quash the indictment was concerned. But the Superior Court, in making a comprehensive statement of reasons for which an indictment may be quashed in this State, *inter alia*, stated: "Where the only witnesses who appeared before them (grand jury) were persons whose names were not endorsed upon the bill, and, therefore, could not be sworn by the grand jury: Act of March 31, 1860, P. L. 427." The only authority quoted to sustain this statement is the act of assembly, no case construing it, and it not being pertinent to the matter for decision, must be considered purely *dictum* and not decisional.

Notwithstanding his decision in the Quarter Sessions on this point in the case of Com. *v.* Wilson, *supra*, as President Judge of the Superior Court, in Com. *v.* Neri Dietrich, 7 Pa. Superior Ct. 515, on page 520, declaring for the court the propriety of the criminal courts directing investigations by grand juries, and quoting from Judge King in Lloyd's Case, 3 Clark, 188, he interpolated parenthetically the quotation as follows: "In such cases, the court may properly, in aid of inquiries directed by them, summon, swear (the oath may now be administered by the foreman of the grand jury) and send before the grand jury such witnesses as they may deem necessary to a full investigation of the evils intimated, in order to enable the grand jury to present the offense and offender." The exact language with his identical parenthetic words was again used by him in the case of Com. *v.* Klein, 40 Pa. Superior Ct. 352, on page 357, notwithstanding his language in Com. *v.* Edmiston, *supra*. Of course, what President Judge Rice stated was *dictum*, because the precise question was not involved in either Com. *v.* Dietrich, *supra*, or Com. *v.* Klein, *supra*, but it is at least an expression of his individual opinion that in grand jury investigations directed by the court the foreman may swear the witnesses.

Two very elaborate and well-reasoned opinions of Quarter Sessions courts are extant, upholding the contention of the Commonwealth in this case to the effect that the foreman or a member of the grand jury, in all cases of investigations pursuant to order of court, has the right to administer oaths to witnesses appearing before the grand jury.

The precise question raised in this case as to the method of swearing witnesses was decided by President Judge Swearingen, of Allegheny County, in 1910, in the case of Com. *v.* Hoffstot, 58 Pitts. L. J. 379, adversely to the contention of the defendant. In that case, the defendant was indicted for conspiracy, and a motion was made to quash the indictment on the ground, *inter alia*, that "witnesses were called and testified before the grand jury which found the indictment whose names are not marked upon the indictment."

This is exactly what happened in the case at bar. Judge Swearingen says (page 382):

"It is urged that the witnesses before the grand jury were not legally sworn, because the foreman had no power to administer the oath to them, and because, after the presentment, they were not resworn when the indictment was found.

"Prior to the Act approved April 5, 1826, P. L. 204, witnesses who testified before a grand jury were sworn in open court, as at common law. Then said

statute was enacted. It is entitled 'An act to enable grand jurors to administer oaths or affirmations to witnesses,' and it provides that:

" 'The foreman of a grand jury, or any member thereof, be and they are hereby authorized and empowered to administer the requisite oaths or affirmations to any witness or witnesses whose names may be marked by the Attorney-General on the bills of indictment.'

"This statute was substantially re-enacted in the Code of Criminal Procedure, and it is found in the 10th section of the Act approved March 31, 1860, P. L. 427, which is as follows:

" 'The foreman of any grand jury, or any member thereof, is hereby authorized and empowered to administer the requisite oaths or affirmations to any witness whose name may be marked by the district attorney on the bill of indictment.'

"Does this statute mean that a grand juror has no power to administer oaths or affirmations to any witness except those whose names the district attorney shall have marked upon technical indictments—such as have been drawn on informations previously made before magistrates—as contended by the defendant? Or does the statute mean that a grand juror has power to administer oaths or affirmations to any witnesses lawfully brought before the grand jury in any lawful investigation then pending before it, as contended by the Commonwealth? . . .

"There can be no doubt that the grant of power contained in the legislation aforesaid is ample to sustain the contention of the Commonwealth. It enables the grand jurors to administer oaths to witnesses—not merely to some witnesses, but to all witnesses. This proposition is supported by the title of the Act of 1826, to which we may look, although it is no part of the act itself. Is the power thus granted restricted by the last clause of the statute, to wit, 'whose names may be endorsed,' etc., or is that clause to be interpreted as directory to the district attorney?

"The Act of 1826 was an enabling act. There were sound reasons for making the changes in the manner of administering oaths to witnesses who were to appear before the grand jury. The purpose was to avoid the necessity of interrupting the proceedings of the courts while such witnesses were being sworn. Of course, if the court were not actually sitting, the witnesses could not be sworn at all. Thus confusion and delay resulted in the public business. Besides, witnesses could not be sworn in the presence of the grand jury. How, then, could it know whether or not all witnesses had been actually sworn? Thus the grand jury might often act upon unsworn testimony. In an important county like Allegheny, the confusion, delay and uncertainty just enumerated might frequently be very serious. Hence, this statute was enacted. This intent was to confer a power upon grand jurors in order to remedy a mischief, and the statute ought to be construed so as to effectuate that intent.

"If the defendant's construction of this statute prevail, we are unable to see how the mischief, which it was the intention to remedy, will be avoided. At common law, it was not necessary that the names of witnesses who appeared before a grand jury should be endorsed upon an indictment. . . . Certainly the legislation under consideration does not require such endorsement. Neither does any other statute to which our attention has been called. Hence, the names of witnesses are not required to be marked upon an indictment at all. If this be true, then it is discretionary with the district attorney whether or not he will mark any or all the names on an indictment; and the witnesses to an ordinary indictment must in some instances still be sworn in

open court, and likewise all witnesses in other investigations by the grand jury. Grand jurors are not learned in the law. They cannot determine when the power conferred by the statute could or could not be exercised. Thus the same confusion, delay and uncertainty would result as the said legislation sought to avoid. It is hardly reasonable to suppose that the legislature undertook to cure a mischief, by granting a power, and then, by a limitation or restriction of the grant, preserved the very mischief it had undertaken to suppress. Plain language is necessary to accomplish that result. Yet, such is the result if the court is still required to be interrupted and delayed while some witnesses who are to go before the grand jury are being sworn. Considering, therefore, the old law, the mischief and the remedy, it seems to us that the power to administer oaths, conferred upon grand jurors by the statute, was not intended to be restricted in the manner claimed by the defendant.

"The clause of the statute under consideration is relative in form. Such a clause may be either restrictive, that is, used to define some word in the principal clause, or it may be non-restrictive, that is, used to add some thought to the principal one already expressed. Usually the test is, can the words 'and it' or 'and their' be substituted for the relative pronoun? If so, the clause is non-restrictive. Applying that test to this statute, the substitution can be made, and it would then read '. . . to witnesses and their names may be endorsed,' etc. Clearly this would be non-restrictive of the grant of power in the principal clause of the statute. Besides, the words 'may be' are used—not 'must be' or 'shall have been.' The word 'may' usually imports permission, not obligation. There is nothing in this statute which indicates that the word 'may' was intended to have any other than its ordinary meaning. And so this construction indicates that the clause of the statute aforesaid is not restrictive of the authority to grand jurors therein previously granted. . . .

"In this case, the grand jury was, under order of court, lawfully engaged in an investigation of subjects of great public moment. Witnesses were lawfully called before it in aid of that investigation. We have just held that they were all lawfully sworn. Thereupon the grand jury returned a presentment to the court, and upon that the court directed the district attorney to lay an indictment before the grand jury, which was done the same day. What was the necessity of again calling the same witnesses, again administering the oath to them, and again having them testify to the same effect as they had already done? . . ."

The exact question was also raised and decided favorably to the Commonwealth in the case of Com. v. Kenehan et al., 12 D. & C. 585, 30 Lacka. Jur. 58, in an elaborate opinion of twenty-seven pages by Judge Maxey, exhibiting much research, in which he reviews the common law, canvasses decisions of the English and American courts, as well as text-books, and consults the practice followed in the courts of this State in the matter of swearing witnesses appearing before grand juries. He refers to the practice of the foreman of the grand jury swearing all witnesses appearing before it in all proceedings as being followed in the Counties of Philadelphia, Allegheny, Luzerne and Lackawanna, and states that he has no knowledge of any county in which it is not followed. Schuylkill County has also followed this practice, as far as the writer is informed.

As a result of his research of the pertinent law, he reached the following conclusions:

"Our conclusion on this branch of the case is that under the Act of March 31, 1860, P. L. 427, as interpreted by the courts of Pennsylvania, the

foreman or a member of the grand jury, in all cases of investigation pursuant to order of court, as in all other cases, has the right to administer oaths to witnesses appearing before the grand jury.

"Our conclusion is, further, that, regardless of the Act of 1860, the foreman of the grand jury has the right to administer oaths to witnesses appearing before the grand jury upon investigations as in all other cases, this right being based upon immemorial custom so long acquiesced in by the various Courts of Quarter Sessions and Oyer and Terminer of Pennsylvania as to become a part of the common law of Pennsylvania.

"Our conclusion is, further, that, even if the right of the foreman to swear witnesses appearing before the grand jury upon investigations were doubtful, as we now expressly hold that it is not, the swearing of witnesses by the foreman would not constitute such an irregularity as at law would justify us in quashing these indictments, for, according to the prescriptions of the very common law which the defendants invoke, an incorrect method of swearing witnesses before the grand jury would not vitiate an indictment founded upon the testimony of such incorrectly sworn witnesses."

We are constrained to adopt the conclusions of President Judge Swearingen in Com. v. Hoffstof, supra, and Judge Maxey in Com. v. Kenehan et al., supra, as well as the apparent custom in Pennsylvania, and, therefore, deny the motion to quash.

The motion to quash the bill of indictment is denied.