## Commonwealth *v.* Soloff, Appellant.

Argued November 18, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ.

*S. V. Albo*, with him *Alexander Cooper*, for appellants.

*William H. Colvin*, Special Deputy Attorney General, with him *Frank F. Truscott*, Attorney General and *Charles D. Coll*, Special Deputy Attorney General, for appellee.

OPINION BY ROSS, J., July 13, 1954:

The defendants, Jack Soloff, Leonard Hall and Martin J. Scanlon, police officers of the City of Pittsburgh, were convicted and sentenced for simple as-

sault and battery after a trial before a judge and jury in the Court of Quarter Sessions of Allegheny County. Motions in arrest of judgment and for a new trial were refused by the court below, and this appeal followed.

At No. 59 September Sessions 1950, in the Court of Quarter Sessions of Allegheny County, the Attorney General of Pennsylvania, who had superseded the District Attorney of Allegheny County, filed a petition asking that a special investigating grand jury be summoned.[1] The petition averred that there existed widespread conspiracies to cheat and defraud the City of Pittsburgh of its properties, supplies and labor; that certain city officials had received money, property and other valuable things to influence their official conduct; that city officials and employes had failed to comply with certain statutes relating to the awarding of contracts; that gambling establishments, lotteries and houses of prostitution operated with the wilful, knowing and corrupt connivance of public officials and employes of the City of Pittsburgh and Allegheny County, and that said officials and employes had accepted bribes for permitting such illegal operations.

In response to the petition an investigating grand jury was impaneled, and on January 2, 1952 it filed a presentment recommending, inter alia, the indictment of the defendants for aggravated assault and battery allegedly committed when arresting a sex offender, one Schilpp. Pursuant to this recommendation of the investigating grand jury, the Attorney General prepared and submitted to the regular March (1952) grand jury indictments "based upon the Presentment at No. 59 September Sessions, 1950" charging the defendants with aggravated assault and battery upon the

---

[1] For the proceedings antecedent to the summoning of the special investigating grand jury, see *Margiotti Appeal*, 365 Pa. 330, 75 A. 2d 465.

person of Schilpp. True bills were returned by the indicting grand jury. Before the trial, the defendants moved to quash the indictments and for a continuance. Both motions were refused and the prosecution proceeded.

Schilpp, who had been tried and convicted on a charge of solicitation to commit sodomy brought by the defendants, testified at their trial that they had beaten him in order to secure a conviction.

The question involved in this appeal is whether the presentment—upon which the indictment was based—was within the orbit of authority of the investigating grand jury, such authority being limited by the scope of the petition which caused the impaneling of such jury.

"A grand jury investigation, because of the gravity of the undertaking, must have a definite purpose to discover criminal acts which seriously affect or injure the public generally, which effect, if permitted to continue, would endanger public safety [citing cases], or health, demoralize the personal security of members of the public, or permit systematic criminal depredations by public officers: [citing cases]. Such matters require immediate attention so that these evils may be suppressed. The criminal acts subject to investigation must be such that the ordinary process of the law is inadequate to cope with or discover them. . . ." *McNair's Petition*, 324 Pa. 48, 60-61, 187 A. 498. In *Com. v. Klein*, 40 Pa. Superior Ct. 352, 357, this Court stated: "This extraordinary power [to depart from the ordinary mode of criminal procedure which affords equal justice to accuser and accused] is to be exercised sparingly, with great caution and only when special circumstances or pressing emergencies require it for the suppression of general and public evils, affecting in their influence and operation communities rather than

individuals." See also *Com. v. Green,* 126 Pa. 531, 17 A. 878.

We think it clear that the matters of public concern which the Attorney General alleged in his petition and which the grand jury was summoned to investigate did not include an isolated instance of overzealous law enforcement or police brutality. On the contrary, the conclusion is inescapable that the Attorney General sought to unearth evidence indicating that the Pittsburgh police and public officials protected criminals for financial gain.

Consequently, we hold that the crime for which these defendants were tried and convicted was not the proper subject of a presentment by the investigating grand jury. Such crime was not cognate to any offense as disclosed by the petition, and, therefore, it seems clear that assault and battery committed by police officers while making an arrest was not within the orbit of authority prescribed for the investigating grand jury. Hence there is no justification for depriving the defendants of their right to the relative advantages accorded by the usual mode of instituting criminal proceedings.

The Commonwealth questions the timeliness of the motion to quash, but in our opinion this contention is without merit.

Judgment of sentence reversed, and the defendants discharged.

---

DISSENTING OPINION BY WRIGHT, J.

The majority opinion is based upon the assumption that the evidence sustains the verdict of the jury. It orders the defendants discharged, however, upon the sole ground that the presentment, upon which the

indictments were based, was not "within the orbit of authority of the investigating grand jury, such authority being limited by the scope of the petition which caused the impaneling of such jury". I find nothing in the three cases cited which would justify such a result. *Commonwealth v. Green,* 126 Pa. 531, 17 A. 878, did not involve a presentment by an investigating grand jury. *Commonwealth v. Klein,* 40 Pa. Superior Ct. 352, involved the attachment of a witness. In *McNair's Petition,* 324 Pa. 48, 187 A. 498, the Supreme Court directed that writs of prohibition and mandamus issue because the order for a grand jury investigation thereunder consideration was not within the power of the Court of Quarter Sessions. I agree with the court below that the recommendation of the special grand jury that these defendants be indicted was clearly within the orbit of its authority, and would affirm upon the following excerpts from the opinion of President Judge Hoban, specially presiding:

"On January 2, 1952, a Special Grand Jury in Allegheny County, convened at No. 59 September Sessions, 1950, (which Special Grand Jury had been investigating, inter alia, an alleged connection of Pittsburgh police with vice and crime) filed a presentment. On that presentment it recommended, inter alia, the indictment of these defendants for aggravated assault and battery.

"On January 31, 1952, ten police officers, including the three defendants, filed a motion to quash the presentment in so far as it recommended indictment against the petitioners, and to expunge from the record certain other items reported therein. The general grounds for the motion were alleged improper actions on the part of the authorities conducting the presentment of testimony before the Grand Jury and preju-

dice because of inflammatory public criticisms of police and other authorities of the City of Pittsburgh and Allegheny County.

"In an opinion filed February 29, 1952, the motion to quash and to strike portions of the presentment from the record was refused.

"The petitioners then applied for a writ of prohibition to the Supreme Court of Pennsylvania, which on March 12, 1952, granted a rule to show cause why such a writ should not be issued, and on March 20, 1952, the rule was discharged, indictments were thereupon prepared, sent to a regular Grand Jury, witnesses were heard, and true bills returned.

"On April 29, 1952, this case was called for trial. Upon the calling of the case Counsel for the defendants immediately moved to quash the indictment and to continue the case. The main reason to support the motion to quash was that the type of crime charged against these defendants was not such as was included within the scope and purview of the operation of the Special Grand Jury, this being an ordinary crime of assault and battery. Hence, since this indictment was after presentment and on Attorney General's bill for a so-called ordinary crime, these defendants were deprived of the usual right of confrontation of witnesses against them upon arraignment. . .

"At oral argument defendants stressed the proposition that the indictment should have been quashed. To the argument that the offense was not properly within the scope and purview of the proceedings of the Special Grand Jury, the Attorney General replies that when a subsequent indicting Grand Jury, after hearing witnesses, returned an indictment, even though on an Attorney General's bill, that it is too late for these defendants to complain of any prior irregularity. . .

"However that may be, we are of the opinion that the presentment of these defendants for the crimes charged and subsequent indictment were well within the scope and purview of the operations of the investigating Grand Jury. These defendants were members of the so-called Vice Squad in the Pittsburgh City police department. The Attorney General's petition alleged a general relationship between police operations and the protection of types of vice and crime in Pittsburgh. Judge Soffel in instructing the investigating Grand Jury directed the jury to investigate into such matters and to return presentments for all violations of law encountered in the course of such illegal operations. Both the presentment of the Special Grand Jury and the testimony in this trial indicate that the crime charged here came to light as a result of the investigation into a wide spread system of extortion charged against these officers and others by reason of their positions as members of the Vice Squad and the opportunities they were said to exercise to protect sex deviates from punishment for their offenses, or to threaten persons charged with such offenses with prosecution and publicity, for corrupt purposes. The victim in this case was a person charged with solicitation for a homosexual act, and the testimony, if believed, indicated that these defendants gave him a serious beating in pursuance of their plan to force him to admit his offense, an act consistent with those complained of by the Special Grand Jury as part of a wide spread system of permitting the existence of a type of vice for corrupt purposes. The act of assault and battery fitted into such a general scheme of operation and we can see no good reason why both the investigation and subsequent presentment and indictment of these defendants was not properly within the scope and purview of the work of the Special Grand Jury".

Two other points should be mentioned. (1) Appellants' motion to quash the presentment was refused. Thereafter, the Supreme Court discharged a rule granted on appellants' petition for a writ of prohibition. I subscribe to the proposition that appellants could not again question the regularity of the recommendation of the Special Grand Jury by motion to quash the subsequent indictments. (2) Appellants were fully aware of the intended presentation of the indictments to the regular March (1952) Grand Jury. True bills were returned on April 2, 1952, and appellants subsequently posted bail. There is merit in the Commonwealth's position that appellants could not thereafter move to quash on the basis of the alleged prior irregularity. This question was not decided by the lower court.

HIRT, J., joins in this dissent.