Commonwealth *v.* National Land and Investment Company, Appellant.

Argued December 8, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, SPAULDING, and CERCONE, JJ. (HOFFMAN, J., absent).

*Raymond J. Bradley,* with him *Wolf, Block, Schorr and Solis-Cohen,* for appellant.

*James D. Crawford,* Deputy District Attorney, with him *Martin H. Belsky* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 24, 1972:
The appeals are quashed.
HOFFMAN, J., took no part in the consideration or decision of this case.

DISSENTING OPINION BY CERCONE, J. :

I dissent.

This is an appeal from the lower court's refusal to quash indictments which defendant contends were based on improper recommendations of the investigating grand jury convened in Philadelphia in April 1969, upon petition of Philadelphia's District Attorney. The District Attorney's petition asked for the impaneling and charge of a grand jury to investigate, inter alia, the actions of various named and unnamed officers and officials of the City of Philadelphia, with others "to give away without lawful justification property and assets of the City of Philadelphia" with respect to "1500 Market Street Project."[1] The petition alleged in paragraph 33 thereof: "The said officials, some of whom are known, and some of whom at this time to your Petitioner are unknown, and others, during the year 1969, at the County of Philadelphia and within the jurisdiction of this Court, *did improperly agree to act, pursuant to their official positions,* to accomplish the payment of $600,000 from the City Treasury, for the improper purpose of gratuitously enriching the stockholders of National Land and Investment Company and Properties Investment Corporation; *did improperly agree to act, pursuant to their official positions,* to re-

---

[1] The petition alleged a number of areas of public misconduct requiring investigation. Each category of charges, such as the charges relating to the "1500 Market Street Project" (paragraphs 33-41 inclusive of the District Attorney's petition), must be viewed as the subject of a separate investigation by the investigating grand jury and will be considered as such in this appeal. As stated by Chief Justice KEPHART in Dauphin Co. Grand Jury Investigation Proc. (No. 1), 332 Pa. 289 at 301: "Each of these eight independent charges, covering as they do unrelated offenses, should be treated by separate investigations, though made by one grand jury, and each should set forth definitely one or more cognate crimes, with the parties thereto, forming part of a system of crime, on which to buttress the particular investigation."

lieve National Land and Investment Company from its legal obligation to pay all land acquisition costs in the '1500 Market Street' Project, for the improper purpose of gratuitously enriching the stockholders of National Land and Investment Company and Properties Investment Corporation; *did improperly agree to act pursuant to their official positions,* to relieve National Land and Investment Company from its obligation to furnish a surety bond in the aforesaid '1500 Market Street' Project, for the improper purpose of benefiting the stockholders of National Land and Investment Company and Properties Investment Corporation, and others; *and did improperly agree to take other actions,* some of which are known and some of which at this time to your Petitioner are unknown, for the improper purpose of benefiting various parties in interest, some of whom are known, and some of whom at this time to your Petitioner are unknown." (Emphasis supplied.)

Paragraphs 33 to 41 of the petition relate to the 1500 Market Street Project and describe the difficulty the District Attorney had in securing information which was being concealed by personnel of the Redevelopment Authority of the City of Philadelphia and which was necessary for a complete and thorough investigation of the 1500 Market Street Project and that the District Attorney's efforts at such investigations were frustrated by principals of the two defendant corporations.

In its conclusion, the petition noted the need for an investigating grand jury to investigate the criminal violations because of the nature of the crimes and the involvement of public officials and the need to aid the public welfare.

As already stated, the prayer of the petition was granted and an investigating grand jury was convened on April 8, 1969, and charged by the Honorable Joseph SLOANE as to its duties and responsibilities.

On October 21, 1969, the investigating grand jury, after the taking of testimony, made its presentment with respect to the 1500 Market Street Project, and recommended that the following Bills of Indictment be prepared against National Land and Investment Company and submitted to an indicting grand jury:

"6.   Recommended Bill of Indictment No. 6

"That, on or about January 30, 1969, in Philadelphia County, National Land and Investment Company, through its agent, Sylvan M. Cohen, did, by false pretense, obtain the signature of certain officials or employees of the Redevelopment Authority of Philadelphia to a written Declaration of Taking of certain real property within the block bounded by Market, Ranstead, Fifteenth and Sixteenth Streets, in the City of Philadelphia, and to the written condemnation bond executed and filed by the Redevelopment Authority of Philadelphia incident to the filing of said Declaration of Taking.

"The false pretense committed by National Land and Investment Company consisted of willfully and knowingly falsely representing to the Redevelopment Authority on or about December 20, 1968, that a corporate surety bond for the 1500 Market Street Project was not obtainable; and/or that National Land and Investment Company had fifteen million dollars worth of net assets plus a six million dollar unconditional letter of credit; and/or that all items listed in a certain pro forma statement were assets with the stated net realizable market value; and/or that certain properties owned by National Land and Investment Company had an agreement of sale with Continental Bank for 1500-04 Market Street, as a result of which the Redevelopment Authority would not be liable to Continental Bank upon filing of a Declaration of Taking; and/or on or about January 9, 1969, that National Land and Investment

Company was, by written release, relieving the Redevelopment Authority of all liability for damages arising out of the taking of certain properties titled in the name of National Land and Investment Company in the 1500 Market Street project area; with the intent that the Redevelopment Authority would rely upon said false pretense.

"7. Recommended Bill of Indictment No. 7

"That, on or about December 20, 1968, in Philadelphia County, National Land and Investment Company, through its agent, Sylvan M. Cohen, did, unlawfully and knowingly make or cause to be made, directly or indirectly, or through any agency, a false statement in writing, with intent that it shall be relied upon, respecting the financial condition or means, or present ability to pay, of National Land and Investment Company, for the purpose of procuring to National Land and Investment Company the delivery of property; and/or the extension of credit; and/or the procurement of contracts of surety; for the benefit of National Land and Investment Company.

"The false statement in writing was a memorandum 'Analysis of Bond Requirement' which falsely stated that National Land and Investment Company had net realizable assets of fifteen million dollars and/or that National Land and Investment Company had net realizable assets of fifteen million dollars plus a six million dollar letter of credit."

"8. Recommended Bill of Indictment No. 8

"That, on or about December 20, 1968, in Philadelphia County, National Land and Investment Company, through its agent, Sylvan M. Cohen, did unlawfully and knowingly make or cause to be made directly or indirectly, or through any agency, a false statement in writing, with intent that it shall be relied upon, respecting the financial condition or means, or

present ability to pay, of National Land and Investment Company, for the purpose of procuring to National Land and Investment Company the delivery of property; and/or the extension of credit; and/or the procurement of contracts of surety; for the benefit of National Land and Investment Company.

"The false statement in writing was a pro forma financial statement falsely purporting to show net realizable assets of National Land and Investment Company of fifteen million dollars."

The District Attorney then prepared and submitted to the indicting grand jury the following bills of indictment against defendant National Land and Investment Company.

At No. 2893 and 2894 of October Term, 1969—two bills charging two separate false pretenses based on recommended Bill of Indictment No. 6;

At No. 2895 October Term, 1969—one bill charging False Statement of Financial Condition as per recommended Bill of Indictment No. 7;

At No. 2896 October Term, 1969—one bill charging False Statement of Financial Condition as per recommended Bill of Indictment No. 8.[2]

The investigating grand jury made no recommendation of indictments against any public official or employee with respect to the 1500 Market Street Project. In fact, it is clear from the charges recommended against National Land and Investment Company and its officers that the investigating grand jury's conclusion was that the public officials and employees were not parties to any misconduct.

---

[2] Bills of Indictment were also recommended against Sylvan Cohen, officer of National Land and Investment Company, which are the subject matter of separate appeals being determined by this court on even date herewith; and against its officer Stephen Altman, but his indictment was quashed.

The question, therefore as I view it on this appeal by defendant company from the lower court's refusal to quash the indictments so based on the investigating grand jury's recommendation, is whether the investigating grand jury was within its authority, when, after not finding widespread systematic official misconduct and criminal conspiracy, as alleged in the petition, it nevertheless proceeded to recommend indictments only against defendant company and its officers charging fraudulent actions perpetrated upon the public officers and employees on January 9, 1969 and December 20, 1968. Or, stated in another manner, can an investigating grand jury properly recommend indictment of private parties on specific charges when its investigation failed to reveal those crimes to be part of any widespread systematic official misconduct and criminal conspiracy as alleged in the petition?

It is my determination that the investigating grand jury's power to recommend indictments cannot exceed the purpose for which it was impaneled and upon which the validity of its impaneling depended. The investigating grand jury in this case, as already stated, was convened upon petition of the District Attorney alleging (a) in paragraph 33 certain acts of misconduct of public officials; (b) alleging in paragraph 41 that high ranking personnel of the Redevelopment Authority were guilty of "overt security breaches" and imposed unexpected barriers to effective investigation of criminal acts, described as a "system of similar or unrelated criminal acts"; and (c) alleging in the concluding paragraph of the petition: "As a result of Petitioner's investigation as aforesaid, Petitioner has found that there prevails in Philadelphia systematic violations of the law among public officers and criminal conspiracies respecting public business, of a widespread nature, jeopardizing and demoralizing the public security; that the

ordinary process of the law is inadequate to cope with or discover them, that a Grand Jury Investigation is necessary to discover criminal acts which seriously affect and injure the general public which, if permitted to continue, would permit systematic criminal depredations by public officers; that such matters require immediate attention so that these evils may be suppressed; that specific crimes have been committed within the statutory period and within the jurisdiction of this court, *which crimes form part of the aforesaid systematic violations of the law;* that the crimes to be investigated are conspiracy, fraud, bribery, extortion, blackmail, threats to kill, loan-sharking, gambling, perjury, hindering a witness, obstruction of justice, malfeasance in office, misbehavior and similar or related crimes wherein public officers or the interests of the public are involved; that there is reasonable cause to believe that an investigation will disclose criminal misconduct which is within the Court's jurisdiction to punish, and that the commission of indictable offenses and corruption in office will be brought to light.

"WHEREFORE, the Petitioner prays that this Honorable Court charge specially the March Grand Jury to investigate any unlawful conduct on the part of any person or public official or employee connected in any way with urban renewal activities in the City of Philadelphia, and to make any proper presentment or presentments to the Court as the ends of justice require."

The investigation, however, failed to support the said allegations with respect to the 1500 Market Street Project for the investigating grand jury recommended only that defendant company, National Land and Investment Company, and its officers be charged with having committed the crime of false pretense on January 30, 1969, and of issuing false statements on December 20, 1968. The investigating grand jury could

not have been impaneled to investigate these specific crimes by private parties for though the charges did affect the public, they certainly did not constitute the type of conduct necessary to the grant of the investigation respecting the 1500 Market Street Project, which as already stated, must be viewed as a separate sphere of investigation. Under Pennsylvania law, an investigating grand jury can only be impaneled "where it is made to appear to a court, as above indicated, that there exists a system of crime among public officers, or criminal conspiracies respecting public business, safety or health, or other criminal acts affecting these functions of a widespread nature, jeopardizing or demoralizing public security or health. . . ." *McNair's Petition*, 324 Pa. 48 (1936), pp. 61-62.

In the instant case, the petition alleged such misconduct and therefore it was properly granted. However, the investigation failed to support such charges and resulted in only specific crimes being charged against third parties which crimes could not have in and of themselves been made the basis of an investigation or have been the proper subject of the investigating grand jury's recommendation except as part of the greater picture of widespread crime and conspiracy portrayed in the petition.[3] The base upon which the grant of the petition and the impaneling of the investigating grand jury rested was removed by the investigation's failure to support the material allegations of the petition, and with that base withdrawn, the investigating grand jury's power to proceed was necessarily terminated.

---

[3] Unlike the case of *Commonwealth v. Soloff*, 175 Pa. Superior Ct. 423 (1954), relied upon by appellant, the investigating grand jury recommendation in this case would have been valid as being within the scope and subject of its investigation, had that recommendation also included charges in support of the above-referred to allegations of the petition.

The propriety of the recommendations of an investigating grand jury cannot be tested solely by the sufficiency of the allegations of the petition whereby it was impaneled. To do so would be to permit all crimes to be made the subject of grand jury investigation by the simple expedient of having the petition merely allege the type of misconduct required for such impaneling. The unsupported allegations of the petition cannot so enlarge the scope of the powers of the investigating grand jury which under Pennsylvania law are most limited.

As stated in *McNair's Petition,* supra, at pp. 57-58: "In some states the power of investigation is virtually unlimited, and the grand jury, of its own motion, may originate and conduct them. . . . *But in Pennsylvania the freedom of the grand jury is very much restricted.* . . . Our courts, mindful of the danger that this body might, if unrestrained and unguided, encroach upon the very liberties which it was created to protect, have imposed definite limitations upon its investigatorial powers." (Emphasis added.)

This limited investigatory power was again referred to in *Commonwealth v. McCloskey,* 443 Pa. 117 (1971), with respect to the very same April 1969 investigating grand jury here involved and the Supreme Court there noted (p. 139): "We reiterate that an investigating grand jury is an arm of the court, in this Commonwealth is judicially supervised from its inception contrary to the practice in most jurisdictions and is strictly regulated in the scope of its inquiry."

Such limitation on the power of the investigatory grand jury is required to guard the accused's rights under the ordinary process of criminal procedure of which he should not be denied "except in special circumstances, or pressing emergencies" as stated in *Lloyd & Carpenter's Case,* 5 Pa. L. J. 55, 3 Clark 188

(1845). In that very early case, Judge KING, in an often-quoted landmark opinion, revealed the law's abhorrence of extraordinary methods of criminal procedure which avoid the accused's right to a preliminary hearing, stating: "By the opportunity given to the accused of hearing *and examining* the prosecutor and his witnesses, he ascertains the time, place and circumstances of the crime charged against him, and thus is enabled, if he is an innocent man, to prepare a defence —a thing of the hardest practicability if a preliminary hearing is not afforded him." He observed that: "It is the fitness and propriety of the ordinary mode of criminal procedure, its equal justice to accuser and accused, that render it of almost universal application in our own criminal courts and make it unwise to depart from it, except in special circumstances, or pressing emergencies." The same reasoning is followed in another often-quoted and relied-upon resume of the law relative to criminal procedure, "The Several Modes of Instituting Criminal Procedure" by the Honorable John C. BELL, then District Attorney of Philadelphia, 13 Pa. District Reports 815 (1904), which concludes: "Of the extraordinary modes referred to some should be preserved, but never extended beyond the limits fixed by precedent and authority, while some other of these extraordinary proceedings might well be still further restricted or even abolished."

How much more today should the accused's right to a preliminary hearing be protected where his participation therein and protection afforded him thereby has been even enlarged in scope by Rule 120 of the Pennsylvania Rules of Criminal Procedure.

The decision in *Commonwealth v. McCloskey*, 443 Pa. 117 (1971), holding constitutional the omission of a preliminary hearing for a defendant indicted pursuant to proper presentment of the April, 1969, investigat-

ing grand jury, did not involve the issue here presented. The recommendations as to the separate spheres of investigation there involved charged the participation of public officials in the misconduct and the public officials were indicted along with those who were not public officials.

In this appeal, as stated, if the crimes charged against the defendant had been found to be a part of the alleged system of official misconduct with respect to the 1500 Market Street Project, the investigating grand jury's power to recommend indictments would have extended to such crimes. The investigating grand jury, however, had no power to recommend indictments against third parties on specific crimes it did not find to be part of any widespread and conspiratorial acts involving public officials as alleged in the petition and on the basis of which the grand jury was impaneled to act. With respect to those specific crimes charged against defendant, the ordinary processes of the law must be pursued. No "special circumstances, or pressing emergencies" required the bypassing of the important rights afforded the defendant by the normal and ordinary process of criminal procedure.

The Commonwealth has filed a motion to quash this appeal now before us on the ground that the appeal is from an interlocutory order of the court below refusing to quash the indictments and defendant did not secure an allowance of appeal from the lower court under Section 501(b) of the Appellate Court Jurisdiction Act of 1970, which provides: "(b) Discretionary Allowance of Appeals.—When a court or administrative agency, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and

that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such order. A petition for an allowance of an appeal under this subsection shall not stay the proceedings before the lower court or administrative agency, unless the lower court or agency or the appellate court or a judge thereof shall so order."

It can be seen from a reading of the above section that the Act vests discretionary power in the lower court to permit an appeal, and in my opinion the lower court's grant of an appeal is not binding on this court. The Act merely seeks to give the lower court a right it previously did not have; it does not intend to limit or deprive the appellate court of its powers in the matter. I believe this court still has the discretionary power to entertain appeals when it believes the circumstances unusual and the grant of an appeal necessary to prevent injustice. In *Commonwealth v. Kilgallen,* 175 Pa. Superior Ct. 52 (1954), the defendant appealed from the lower court's refusal to grant his motion to quash the indictment, which motion was based on the fact that the record of his testimony before the investigating grand jury, obtained in violation of his constitutional immunity, was made available to and considered by the regular grand jury which indicted him. We allowed the appeal, saying: "In general a defendant charged with crime does not have the right of appeal before his trial and conviction, nor thereafter until after final judgment of sentence. But our Supreme Court in entertaining an appeal under unusual circumstances to prevent injustice, where no sentence had been imposed, said: 'this rule should not be held one of universal application': Commonwealth v. Trunk et al., 311 Pa. 555, 565, 167 A. 333. The rule is not inflexible and will yield in exceptional cases. Commonwealth v. Ragone,

317 Pa. 113, 176 A. 454. . . . In our view the question of the validity of the indictments in these cases is one which under the circumstances should be decided in limine with finality. The nature of the charges affects the public interest, and the grounds for appellant's claim of immunity, provide the exceptional circumstance which justify us in entertaining the appeals in these cases."

On appeal of that case to the Supreme Court, *Commonwealth v. Kilgallen*, 379 Pa. 315 (1954), the above-quoted language was approved and the motion to quash was reinstated, with directions to hear testimony on defendant's claim that his constitutional safeguards were ignored. The Supreme Court there stated: ". . . the impenetrability of grand jury [indicting grand jury] proceedings is subject to exceptions and we think that the instant case presents a justifiable exception. If appellant's constitutional safeguards were ignored as contended, it was a flagrant transgression of the letter and spirit of our organic law."

In the instant case, no oral evidence is required to sustain the invalidity of the indictments which were, as already stated, based on improper recommendations which were not within the power of the investigating grand jury to make.

Accordingly, I would deny the Commonwealth's motion to quash the instant appeal and would reverse the order of the court below refusing defendant's motion to quash the indictments against it.

SPAULDING, J., joins in this dissenting opinion.