# Commonwealth of Pennsylvania v. Neri Dietrich, Appellant.

*Discretion of court—Refusal of postponement not error—Appeals.*

A motion of postponement is addressed to the sound discretion of the court, and the refusal of such motion is not ordinarily assignable for error even if excepted to at the time.

*Grand jury—Investigation by, directed by court.*

Criminal courts may call the attention of grand juries to, and direct their investigation of, matters of general public import, which from their nature and operation in the entire community justify such intervention.

*Investigation directed on suggestion of grand jury.*

It is no abuse of discretion for the court to direct the grand jury to investigate alleged crimes in the conduct of a public institution and it was none the less " given them in charge " because a suggestion upon which the court acted came to it from the grand jury.

*Bribery—Public office—Appointment induced by promise.*

Where the gravamen of the offense is an alleged bribery to confer a public office it is sufficient if there was a promise of money on which defendant was induced to make the appointment although the appointor did not actually agree to do so, and that in pursuance of such promise or offer he afterwards accepted the money which had been offered.

Argued Mar. 14, 1898. Appeal, No. 133, Oct. T., 1897, by defendant, from judgment of Q. S. Schuylkill Co., May T., 1897, No. 995, on verdict of guilty. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Indictment for accepting bribes. Before ARCHBALD, P. J., of the 45th judicial district, specially presiding.

It appears from the record and the evidence that the defendant, a poor director of Schuylkill county, was indicted by the grand jury sitting at the May sessions of 1887, upon a bill of indictment which bore the following indorsement: "This indictment is based upon presentation of grand jury for March sessions, 1897, and is submitted to the grand jury by the district attorney under the direction of the court."

Other facts sufficiently appear in the opinion of the court.

Verdict of guilty with a recommendation to the mercy of the court. Sentenced to pay a fine of $600, costs of prosecution and undergo a term of imprisonment in the Schuylkill county prison for a period of one year and six mouths. Defendant appealed.

*Errors assigned* were (1) refusal of the court to quash the indictment. (2) Because the presentation was made by twenty-four grand jurors, all of whom were sworn, deliberated as a body, and made the so-called presentment, which body consisting of twenty-four grand jurors, was an illegal body. (3) In directing a receipt which was offered by the commonwealth in evidence to be changed so as to erase a portion which had been inserted after the receipt had been given by defendant and which addition to the receipt was made without the knowledge or consent of the defendant. (4) In admitting said receipt in evidence after a portion of it had been erased. (5) In answer to defendant's second point, which point and answer are as follows: " The fact of the defendant receiving money from the Grays after the appointment of John M. Gray, should not influence the jury in rendering their verdict, unless they find under the evidence, that the payment of the money was made in pursuance of a corrupt bargain between the defendant and the Grays or any person interested in their behalf. *Answer :* If by the term ' bargain ' it is meant that there was an actual

agreement assented to on one side and on the other, I cannot affirm this point. If it means that when the offer was made by Dr. Gray it was accepted by the defendant, if that is what is meant by the word 'bargain,' I cannot affirm this point. In my judgment it is sufficient if there was a promise of money on which the defendant was induced to make the appointment, although he did not actually agree to do so, and that in pursuance of this promise or offer he afterward accepted the money which had been offered." (6) In answer to defendant's third point, which point and answer are as follows : " In order to convict the defendant, the jury must find that the appointment of Dr. Gray was made by defendant in pursuance of an offer made by either or both of the Grays, which offer was accepted and the appointment made in pursuance of said offer. *Answer:* This, as you will see, presents the alternative which I say I could not affirm. This third point does not correctly state the law, and I refuse it." (7) In permitting the district attorney in his closing address to the jury (he having the closing address in the case), to read a section of the constitution of the state to the jury, which was objected to at the time by counsel for the defendant and which objection was overruled by the court, and exception taken thereto, and bill sealed for the defendant. (8) Because the court permitted the district attorney to send out to the jury the indictment with the indorsement thereon.

*W. A. Marr* and *W. J. Whitehouse,* for appellant.—That a presentment thus prepared by private parties and presented by the grand jury should be quashed hardly needs a citation of authorities, as it is plainly in violation of all law and all criminal procedure.

It is not allowable for individuals to go before the grand jury with their witnesses and prefer charges : McCullough v. Com., 67 Pa. 30 ; Com. v. Green, 126 Pa. 531 ; Com. v. McComb, 157 Pa. 611.

The power of a district attorney to prefer an indictment before a grand jury, without a previous commitment of the accused, must be exercised under the supervision of the proper court of criminal jurisdiction, and its employment can only be justified by some pressing and adequate necessity : Rowand v. Com., 82 Pa. 405.

Not more than twenty-three persons can lawfully serve on a grand jury, and where twenty-four persons so act a motion to quash the indictment must be sustained : 4 Blackstone, Comm. 302; 2 Hale, P. C. 154; King v. Marsh, 6 A. & E. 236 ; Com. v. Leisenring, 2 Pearson, 466 ; Com. v. Salter, 2 Pearson, 461.

An indictment should bear the name of the prosecutor. See Act March 31, 1860, sec. 27, P. L. 382, 437.

Counsel cannot be permitted to read to the jury the opinion of the Supreme Court in another case involving the same question : Ege v. Medlar, 82 Pa. 86 ; Good v. Mylin, 13 Pa. 538.

A. W. *Schalck* and *Edgar W. Bechtel,* district attorney, with them *C. A. Snyder, G. A. Berner* and *F. G. Farquhar,* for commonwealth.—The power of the court to direct bills of indictment without previous hearing or binding over is so well established as to scarcely need citations of authorities. Counsel cited on this point, among others, McCullough v. Com., 67 Pa. 30, Brown v. Com., 76 Pa. 319, Com. v. Hurd, 177 Pa. 481, Com. v. Taylor, 2 Dist. Rep. 743, and Com. v. English, 11 Phila. 439.

OPINION BY RICE, P. J., July 29, 1898:

On March 5, 1897, the grand jury reported, in writing, to the court of quarter sessions, " that it is come to their knowledge, and that they verily believe, that a corrupt state of affairs exist at the almshouse ; that for the information of the court, in order that the district attorney may aid the grand jury in investigating the facts as hereinafter set forth, the following in particular against one of the directors at least is presented." Here follows a list of charges of official misconduct on the part of the defendant and others in connection with the management of the affairs of the almshouse. The paper concluded as follows : " The following witnesses to be subpœnaed are also hereby submitted, viz : . . . . All of which is respectfully submitted ; and the grand inquest pray your honorable court to direct the district attorney to forthwith issue subpœnas for the above named witnesses for the purpose of investigating the aforesaid facts in full." This was signed by twenty-four grand jurors. Thereupon the court made an order directing a subpœna to issue " to bring in the witnesses desired." On the

following day the grand jury made their final report in which they said, inter alia: "Our attention has been called to several abuses on the part of officials at the county almshouse. These matters we have carefully investigated as fully as our time would allow and would respectfully report concerning the same as follows:

"That upon the sworn testimony of several witnesses which we have had subpœnæd to appear before us the complaints are well-founded and sustained by the testimony taken. The complaints and charges are fully set forth in our presentment hereto attached and made a part of the report. We strongly recommend that prompt action be taken by the court and the district attorney, and prosecutions instituted for criminal misconduct on the part of the officials and employees of the county." Attached to or accompanying this report was their preliminary report of March 5, containing a specification of the charges.

At the succeeding sessions an indictment against the defendant was prepared by the district attorney, and, by direction of the court, was sent before the grand jury, who returned a true bill. The order indorsed on the bill was as follows: "This indictment is based upon the presentment of the grand jury for March sessions, 1897, and is submitted to the grand jury for May sessions, by the district attorney under direction of the court."

The defendant's counsel moved to quash the indictment, but when the matter was called for argument moved for a postponement until such time as they could obtain the attendance of the deputy district attorney (who was then out of the state), and call him to prove how and under what circumstances the grand jury's attention was called to the several abuses set forth in their presentment. It is unnecessary to refer in detail to the allegations in that regard. It is sufficient for present purposes to say that a motion for postponement is addressed to the sound discretion of the court, and the refusal of such a motion is not ordinarily assignable for error even if excepted to at the time. There is nothing to take this case out of the general rule; therefore, the first assignment is to be disposed of on what the record shows, and not on allegations of facts outside the record, nor on testimony taken in another case, long after the ruling complained of was made. We have quoted from the record all that has any material bearing upon the question.

The oath administered to the grand jury contains a concise statement of their duties. They are to diligently inquire, and true presentment make as well of all such matters and things as shall be given them in charge as of those things which they shall know to be presentable. However it may be elsewhere, it is well settled in Pennsylvania, that they have no authority, of their own motion, to institute a prosecution by summoning and examining witnesses for the purpose of obtaining information upon which to base a presentment of a suspected offender. Nor is it allowable for private individuals to go before the grand jury with their witnesses and prefer charges. The usual course, where a presentment is thus surreptitiously procured, and bill founded upon it, has been to quash the indictment on motion, and before plea pleaded. It is the only way to reach the wrong. See opinion of Judge KING in Lloyd's Case, 3 Cl. 188; 1 Wh. Cr. L. § 458 (ed. 1874); McCullough v. Com., 67 Pa. 30 ; Rowand v. Com., 82 Pa. 405; Com. v. Green, 126 Pa. 531; Com. v. McComb, 157 Pa. 611. But it is equally well settled, that the criminal courts may call the attention of grand juries to, and direct their investigation of, matters of general public import, which from their nature and operation in the entire community justify such intervention. " The action of the courts on such occasions," says Judge KING, "rather bears on things than persons, the object being the suppression of general and public evils, affecting, in their influence and operation, communities rather than individuals, and therefore, more properly the subject of general than special complaint; such as great riots that shake the social fabric, carrying terror and dismay among the citizens; general public nuisances affecting the public health and comfort; multiplied and flagrant vices tending to debauch and corrupt the public morals and the like. In such cases the court may properly, in aid of inquiries directed by them, summon, swear " (the oath may now be administered by the foreman of the grand jury) " and send before the grand jury, such witnesses as they may deem necessary to a full investigation of the evils intimated, in order to enable the grand jury to present the offence and offender." The instances mentioned by the learned judge where the exercise of this extraordinary power is justifiable are given by way of illustration rather than limitation,

and we are not prepared to say that the investigation which resulted in the presentment under consideration was not justified by the general principles governing the exercise of the extraordinary power. The sale to the highest bidder of appointments to office by public officials who have the selection of the appointees, to say nothing of the other gross misdemeanors in office embraced in the grand jury's presentment, is a public evil of the most odious and dangerous nature, affecting in its influence and operation the whole community rather than individuals, and, therefore, more properly the subject of general than special complaint. Popular government cannot long flourish where such practices become common and go unrebuked, as they are likely to if the prosecution of the offender is left exclusively to the disinterested action of private citizens. But whether it was the imperative duty of the court to give the matter in charge to the grand jury or not, it is clear, to say the least, that it did not abuse its discretionary power in directing them to investigate the matter, and it was none the less "given them in charge" because the suggestion came from the grand jury. No matter from what source it came, the court sanctioned the investigation, and named the witnesses to be summoned and examined, and the presentment was based on the investigation thus made under the direction and supervision of the court, and not on an unauthorized investigation instituted by the grand jury of their own motion. Such being the case the court committed no error in directing the indictment to be sent before the grand jury at May sessions or in refusing to quash it after it was returned a true bill. In all essential particulars the question raised by the first assignment of error is ruled by Com. v. Hurd, 177 Pa. 481. See also McCullough v. Com., supra; Brown v. Com., 76 Pa. 319; Rowand v. Com., 82 Pa. 405, Harrison v. Com., 123 Pa. 508, 515.

The fact that the presentment was made by a grand jury consisting of twenty-four members was not assigned as a reason for quashing the indictment, and the irregularity, if it were one, cannot be taken advantage of after plea and a trial on the merits. But we are not convinced that it would have been a good reason for quashing the indictment even if it had been specifically assigned. Our statute, following the rule of common law, provides that twenty-four persons shall be drawn

and summoned as grand jurors. "As many as appear upon this panel are sworn upon the grand jury to the amount of twelve at the least, and not more than twenty-three; that twelve may be a majority : " 4 Bl. Com. 302. Having regard to the reason of the rule, or rather, practice, it might be argued with some plausibility that a presentment signed by each of the twenty-four grand jurors summoned and sworn would be valid. Be that as it may, it results from what we have said upon the first assignment; that the court might have sent the bill before the grand jury without a formal presentment. Its action was none the less valid because it was preceded by the unanimous presentment of a former grand jury.

The defendant's receipt, contained in the third and fourth assignments of error, was offered merely as a written admission of the payment of the money. The witness to whom it was given explained that he had added certain words as a memorandum for his own use. That they were added after the receipt passed from the hand of the defendant was undisputed, and as he objected to the admission of the paper as it stood, even with the explanation, the court committed no error, of which he could complain, in directing it to be restored to its original condition by erasing the words. This was not a suit between the parties to the instrument in which it was offered in support of the plaintiff's claim or in defense ; neither the witness nor his brother for whom the bribe was paid was concerned as party or prosecutor in the issue being tried ; therefore, after the alteration had been explained, the commonwealth was not to be deprived of the benefit of the evidence by the unauthorized act of one of the parties to the illegal transaction.

The defendant's second and third points were so drawn as to convey the impression that unless a bargain was consummated by an offer of a bribe on one side and a promise to make the appointment on the other there could be no conviction, and an affirmance of the points without qualification or explanation would have been erroneous and misleading. The learned judge who presided at the trial correctly stated the law, in language that the jury could not fail to comprehend, when he affirmed the defendant's first point without qualification, and said in answer to his second point: "If by the term 'bargain' it is meant that there was an actual agreement assented to on one

side and on the other, I cannot affirm this point. If it means that when the offer was made by Dr. Gray it was accepted by the defendant, if that is what is meant by the word 'bargain' I cannot affirm this point. In my judgment it is sufficient if there was a promise of money on which the defendant was induced to make the appointment, although he did not actually agree to do so, and that in pursuance of this promise or offer he afterwards accepted the money which had been offered."

The seventh assignment of error does not require particular notice. Even if an exception to the ruling was taken at the time it would have been unavailing. The question as to the propriety of permitting text books and reports of cases to be read to the jury is not before us, and will not be discussed. It is clearly not error to permit counsel to read a section of the constitution pertinent to the indictment being tried.

Leaving out the argumentative matter, not supported by the record, contained in the eighth assignment, there is nothing left but the fact that the court sent out with the petit jury the indictment on which was indorsed the order directing the bill to be sent before the grand jury. No objection on this ground appears to have been made at the trial, and the court would have committed no error in overruling it if it had been made. This requires no discussion.

This case was ably and fairly tried, and in view of all the evidence, including the defendant's admissions upon the witness stand, there can be no doubt of the propriety of his conviction. Nor is there in the record any well founded objection to the legality and regularity of the proceedings that led to his conviction.

The judgment is affirmed, and it is ordered that the record be remitted to the end that the sentence be fully carried into effect, and it is further ordered that the defendant forthwith surrender himself to the keeper of the Schuylkill county prison, and serve out so much of the period of imprisonment prescribed by said sentence as had not expired on September 16, 1897, the day the supersedeas on this appeal took effect.