Commonwealth, Appellant, *v.* Hubbs (No. 1).

Argued May 5, 1939. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Bryan A. Hermes,* with him *Thomas I. Guerin,* Deputy Attorneys General, *Claude T. Reno,* Attorney General, *James N. Lafferty,* and *Gilliat G. Schroeder,* Assistant Deputy Attorneys General, for appellant.

*Thomas D. McBride,* for appellee.

OPINION BY CUNNINGHAM, J., October 10, 1939:

In behalf of the Commonwealth of Pennsylvania, its Attorney General, acting in his official capacity, has appealed from an order of the Quarter Sessions of Philadelphia County quashing an indictment returned against Edward Hubbs and charging him with having committed wilful and corrupt perjury while testifying, on October 14, 1937, as a witness before the October, 1937, grand jury, relative to matters into which it had been specially directed and charged to inquire. As that grand jury, by direction of the court, remained in session and continued its investigations long after the expiration of the term of court for which it had been summoned, it may be designated an investigating, as distinguished from an indicting, grand jury. See *Shenker v. Harr,* 332 Pa. 382, 2 A. 2d 298; and *Com. v. Wilson,* 134 Pa. Superior Ct. 222, 4 A. 2d 324.

The indictment with which we are now concerned was an Attorney General's bill, signed by the Attorney General then in office and presented to the November, 1938, indicting grand jury by leave of the court below. Marked by a Deputy Attorney General on the back of

the bill were the names of six witnesses, including two court stenographers who took "notes of testimony for the special October, 1937, grand jury." It was returned a "True Bill" the same day it was presented.

The background of this indictment and of another, returned against the same defendant by the same indicting grand jury on the same day to No. 650 November Sessions, 1938, in which he was charged with having "misbehaved himself in office," and from the quashing of which the Commonwealth has also appealed to No. 173, October Term, 1939, of this court, may be thus sketched from the faces of the indictments, the petitions of the defendant for rules to show cause why they should not severally be quashed, the answers of the Commonwealth, the hearing below before LAMBERTON, J., and his opinion filed in compliance with our Rule No. 58.

In response to the petition of the District Attorney of Philadelphia County, BOK, P. J., then presiding in the quarter sessions, charged the October, 1937, grand jury "to inquire into and investigate, amongst other matters and things then and there given them in charge, the alleged breakdown of law enforcement, particularly in respect to gambling, as well as the neglect, inefficiency and connivance of members of the Bureau of Police."

Subsequently, the Attorney General superseded the District Attorney and appointed certain Deputy Attorneys General to conduct the investigation and prosecute any criminal charges arising therefrom.

At that time the defendant was the Superintendent of the Bureau of Police, Department of Public Safety, of the City of Philadelphia.

Among other things, this investigating grand jury made a presentment in which they charged the defendant with having perjured himself while testifying before it, and with the common law offense of misbehavior in office. It was upon these presentments that the indictments above mentioned were framed and laid before

the indicting grand jury functioning for the November, 1938, term of the court below.

As the questions involved upon the present appeal from the order quashing the perjury indictment are unrelated to those involved in the appeal to No. 173, October Term, 1939, from a similar order quashing the misdemeanor in office indictment, we shall confine the remainder of this opinion to the perjury case and file a separate one in the misbehavior in office charge.

Two specific charges were made in the perjury indictment. The first was that the defendant, having been duly called as a witness before the October, 1937, investigating grand jury and having taken an oath that the testimony he was about to give "would be the truth, the whole truth, and nothing but the truth," did "wilfully, knowingly, corruptly and falsely swear and testify" that he "did not then know that gambling had been conducted on a large scale in the City of Philadelphia during the year 1937; whereas in truth and in fact, he, the said Edward Hubbs, then and there well knew that gambling had been [there] conducted on a large scale" during that year. The other charge was that defendant denied he had received, during 1937, any reports from Harry Wissler and three other named patrolmen "that gambling resorts were established and in operation" in Philadelphia; whereas he well knew Wissler had reported to him, during August of that year, that approximately one hundred and twenty-five such resorts were in operation, and had given him in writing lists "of the addresses and locations of such gambling resorts."

A number of grounds were advanced in defendant's petition for quashing this indictment. All of them but one—an alleged illegality in the administration of the oath under which defendant testified—were overruled, and the indictment was quashed solely upon the ground that the oath had been illegally administered, in that

it had been administered by "a person not legally qualified to do so."

It was recited upon the face of the indictment that one, Landis R. Klinger, was the duly appointed foreman of the October, 1937, investigating grand jury and that he, as such foreman, administered to defendant the oath under which the latter testified before that body and under which the Commonwealth charged, in the indictment found by the November, 1938, indicting grand jury, the perjury had been committed.

It was averred in defendant's petition that "Landis R. Klinger, foreman of the October, 1937, grand jury, was without lawful and competent power and authority to administer such oath in the premises." A further averment of the petition was that defendant "was not sworn by or before a judge of the court of quarter sessions prior to his appearance" before that grand jury.

The Commonwealth, in its answer, admitted defendant had not been sworn by or before the judge of the court under which the grand jury was conducting its investigation, but averred that its failure to have defendant sworn in open court before appearing for examination by the grand jury was an "immaterial" matter because the foreman of that tribunal "had lawful and competent power and authority to administer," and did administer, the oath under which defendant testified.

We, therefore, now have before us for consideration and disposition a pure question of law. No extended discussion is required to support the proposition that the crime charged in the present indictment could have been committed only if the defendant was testifying under the sanction of an oath "legally administered": Act of March 31, 1860, P. L. 382, Section 14, 18 PS §311; *Linn v. Com.,* 96 Pa. 285; *Com. v. Stiles,* 97 Pa. Superior Ct. 559.

We adopt the following statement by the Commonwealth of the question involved upon this appeal: "Has the foreman of a grand jury in the course of an in-

vestigation under the direction of the court [legal] authority to administer an oath to a witness before it?"

As we read the opinion of the court below, it may be thus outlined: At common law all witnesses summoned to appear before any grand jury were sworn in open court "and sent to the grand jury to give their evidence to them in the room to which they [had] retired." This procedure was in force in this Commonwealth (*Com. ex rel. Minerd et al. v. Margiotti,* 325 Pa. 17, 188 A. 524) as to all grand juries, whether engaged in investigating matters given them in charge by a court or in considering formal indictments submitted to them by the proper prosecuting officer, until it was modified *to a limited extent* by the Act of April 5, 1826, P. L. 204, reenacted as Section 10 of the Act of March 31, 1860, P. L. 427, 19 PS §731, and reading: "The foreman of any grand jury, or any member thereof, is hereby authorized and empowered to administer the requisite oaths or affirmations to any witness *whose name may be marked by the district attorney on the bill of indictment.*" (Italics supplied)

As the October, 1937, grand jury was merely an investigating body when the defendant was called to testify before it and no indictment against any person for any offense had been submitted to it with any name or names of witnesses "marked" by a prosecuting officer upon it, the foregoing statutory authorization to the foreman, or any member, of a grand jury to administer the requisite oaths or affirmations to *such* witnesses could have no application to the administering to the defendant of the oath here involved.

The representatives of the Commonwealth concede, as they are obliged to do under such authorities as Proceedings Against the Earl of Shaftesbury, 8 Howell State Trials 759, 771, and 1 Chitty Criminal Law, 3d American Ed. pp. 311-317-321, that the common law of England was as above stated. See also *State v. Fasset,* 16 Conn. 457, 464, and 28 C. J. 807. They con-

tend, however, "that regardless of the Act of 1860 the foreman of a grand jury has the right to administer oaths to witnesses upon investigations, as in all other cases, based upon immemorial custom so long acquiesced in by the various courts of Pennsylvania as to become a part of the common law of Pennsylvania."

Both sides concede the exact question now raised has not been decided by either appellate court and that there has been some contrariety of opinion and of practice in our lower courts.

In support of their contention counsel for the Commonwealth rely upon the lower court cases of *Com. v. Kenehan,* 12 D. & C. 585, 587, (1929) ; *Com. v. Hoffstot,* 58 Pitts. L. J. 379, 382, (1910) ; and *Com. v. Zavaglia,* 12 D. & C. 529, 532, (1929) ; and upon several parenthetical remarks of an eminent former president judge of this court, RICE, P. J., in *Com. v. Dietrich,* 7 Pa. Superior Ct. 515; and *Com. v. Klein,* 40 Pa. Superior Ct. 352, 357. At the hearing upon the petition for the rule in this case the answers of forty-three judges to a questionnaire relative to the practice in their districts as to administering the oath or affirmation to witnesses appearing before a grand jury were offered and received in evidence.

We are not convinced that the Commonwealth's assertion of the existence of an immemorial custom which has become the common law of Pennsylvania is supported by the reported cases or by the answers to the questionnaire.

As against the three lower court cases, above cited, upon which counsel for the Commonwealth rely, an examination of the reports discloses the following impressive array of lower court decisions to the contrary: *Com. v. Cochran,* 22 Lancaster L. R. 188, Lancaster Co. (1905) (HASSLER, J.) ; *Com. v. Schall & Danner (No. 2),* 5 York L. R. 139, York County (1892) (BITTINGER, J.) ; *Com. v. Frescoln,* 11 Lancaster L. R. 161, Lancaster Co. (1894) (BRUBAKER, J.) ; *Com. v. Price,* 3 C. C. 175,

Wyoming County (1887) (SITTSER, P. J.); *Com. v. Wilson*, 9 C. C. 24, Luzerne County (1889) (RICE, P. J.); *Com. v. Bayley*, 18 Dist. 909, York County (1908) (BITTINGER, P. J.); *Com. v. Doran*, 20 Luzerne L. R. 20, Luzerne County (1918) (GARMAN, J.); *Com. v. Feenix*, 6 D. & C. 15, Phila. County (1925) (STERN, J., now Mr. Justice STERN,) [dictum]; *Com. v. Hamilton*, 4 D. & C. 329, Allegheny County (1923); and *Com. v. Tomli*, 21 Dist. 1016, Lackawanna County (1912) (NEWCOMB, J.).

Granting that a settled usage, universally acquiesced in throughout the Commonwealth over a long period of time, may assume the proportions of a common law rule, the ten cases just cited, considered in connection with the three cited by the Commonwealth's representatives, demonstrate there is no settled usage and indicate that the weight of authority is clearly against the contention now made in behalf of the Commonwealth.

Nor does an analysis of the replies of the president judges of the various judicial districts to the questionnaire support the assertions of counsel for the Commonwealth. On the contrary, it discloses that almost universally the Act of 1860 has been interpreted as applying only to the swearing of witnesses whose names have been "marked" upon a formal indictment regularly submitted to an indicting grand jury. In response to the question whether in the consideration of regular bills of indictment the foreman administers the oath to witnesses other than those whose names are endorsed on the indictment, the vast majority of replies were in the negative. The answers also show that grand jury investigations have been comparatively rare; they reveal that such proceedings have been conducted in only fourteen districts. Witnesses were sworn by the foreman, or a member, of the grand jury in twelve of them, and by a judge of the court which directed the investigation in the others. Thus, in only twelve districts out of a

total of fifty-eight have the witnesses before an investigating grand jury been sworn by its foreman.

Moreover, our own reports, prior to the Act of 1826, supra, abound with recognition of the common law rule that all witnesses appearing before a grand jury were sworn in open court. In the Appendix to 7 Smith's Laws of Pa. (1817-22) 685 et seq., there appears an exhaustive note by the editor concerning, inter alia, "The nature and obligation of the grand juror's office." After describing the impanelling of a grand jury and the delivery of the court's charge the author states, (at p. 686) : "The witnesses are then called and usually sworn in open court, their names endorsed on the indictment and sent to the grand jury."

In 1 Addison's Reports, App., 71, 73, (Pa. 1793), wherein there is a discussion of the functions of the grand jury, it is said: "As to the jury only it belongs to determine what witnesses it is proper to believe; to the court only it belongs to determine what witnesses it is proper that the jury should hear. The jury therefore ought to hear no witnesses who are not sent to them under the sanction of the court; and witnesses are sworn by the court or some judge thereof, before they are sent to the jury to give testimony."

In fact, the three above cited lower court cases relied upon by the Commonwealth all concede the existence and application of the common law rule in earlier years, but suggest it has been totally abrogated by custom and the statutory enactments of 1826 and 1860, supra, and not merely modified as respects only witnesses whose names have been "marked by the district attorney on the bill of indictment."

· This suggestion is in direct conflict with the view expressed by Wharton in his Treatise on Criminal Procedure, 10th Ed. Vol. 2, §1286, footnote p. 1747: "In Pennsylvania, by the Act of April 5, 1826, as incorporated in the revised Act of 1860, the foreman of the grand jury, or any members thereof, is authorized to

administer the oath to witnesses. It will be observed, however, that in the latter state the authority is expressly limited to such witnesses 'whose names are marked by the attorney-general on the bill of indictment'; and, consequently, all others must be sworn in open court."

Insofar as custom is concerned we have already indicated the Commonwealth's contention is negatived by an examination of the decisions of our courts of original jurisdiction and by an analysis of the answers to the questionnaire.

We also find ourselves unable to agree with the Commonwealth's construction of the Act of 1860. Emphasis is placed by its representatives upon *Com. v. Kenehan,* supra, (12 D. & C. 585) decided in 1929 by a majority of the Quarter Sessions of Lackawanna County in an opinion by MAXEY, J., now Mr. Justice MAXEY of our Supreme Court.

The reasoning of the opinion, as we understand it, is that, as expediency and dispatch in the performance of the duties of the court and grand jury are desirable, the presumption is the legislative intent was to do away entirely with the common law requirement that grand jury witnesses be sworn in court—no matter what kind of a grand jury required their presence and testimony and regardless of the fact whether or not their names had been endorsed upon a formal indictment. The view was expressed that one of the purposes of the statute "was to avoid the necessity of interrupting the proceedings of the court while such witnesses were being sworn."

In a dissenting opinion by NEWCOMB, P. J., (p. 603) the position was taken that under the express provisions of the statute the authority of a foreman, or member, of a grand jury to swear witnesses appearing before it "attaches by reason of an official act of the district attorney" and is "incidental only to the submission of a formal bill."

It seems to us that the majority opinion in the Kenehan case fails to give due consideration to several established principles of construction.

It is axiomatic that "every law shall be construed if possible to give effect to all its provisions." This principle has been codified by legislative enactment: Act of May 28, 1937, P. L. 1019, Art. IV, §51, 46 PS §551. Section 52, 46 PS §552, codifies the equally familiar rule that in ascertaining the legislative intent it may be presumed "that the legislature intends the entire statute to be effective and certain." In other words, a construction which relegates some words to the position of surplusage is not permissible, unless no other construction is reasonably possible: *West v. Lysle*, 302 Pa. 147, 152. To interpret the clause regarding the marking of the names of witnesses on the bill by the district attorney as not having been intended to restrict and limit the powers conferred by the principal clause to a defined class of grand jury witnesses (the construction adopted in the three lower court decisions relied upon by the Commonwealth) is equivalent to a declaration that it is superfluous and meaningless. Certainly, no statutory authority was necessary to empower the district attorney to mark the names of witnesses on indictments; the provision, therefore, becomes significant only when construed in a restrictive sense.

Moreover, the statute is in derogation of the common law. It should be construed strictly and only such modification adopted as the statute clearly and definitely prescribes: *Heaney v. Mauch Chunk Boro.*, 322 Pa. 487, 490, 185 A. 732; *Bridgeford v. Groh et ux.*, 306 Pa. 566, 575, 160 A. 451; *Wilson v. Wilson*, 126 Pa. Superior Ct. 423, 429, 191 A. 666. Section 58 of the Act of 1937, supra, 46 PS §558, expressly preserves this rule as to statutes approved prior to its enactment.

The statement in the majority opinion in the Kenehan case that the conclusion there reached is in accord with the practice in the four largest counties in the

state—Philadelphia, Allegheny, Luzerne and Lackawanna—is considerably weakened by the fact that there are decisions to the contrary in each of them. See as to Philadelphia County, *Com. ex rel. Jack v. Crans,* 2 Clark 441, 450, (1844) (dictum) ; *Lloyd and Carpenter's Case,* 3 Clark 188, 192, (1845) (dictum) ; *Com. v. Feenix,* supra; as to Allegheny County, *Com. v. Hamilton,* supra; as to Luzerne County, *Com. v. Wilson,* supra; *Com. v. Carlucci,* 15 Luzerne 167 (1910) (SHULL, P. J.) ; as to Lackawanna County, *Com. v. Tomli,* supra.

There is no signficance in the parenthetical remarks of President Judge RICE in *Com. v. Dietrich,* supra, (7 Pa. Superior Ct. 515), and *Com. v. Klein,* supra, (40 Pa. Superior Ct. 352), to which we referred in indicating the authorities relied upon by the Commonwealth. Neither case involved the issue here raised. However, he parenthetically remarked in the course of his opinions, after stating that the court may summon and swear witnesses in aid of grand jury inquiries, that "(the oath may now be administered by the foreman of the grand jury)." It is obvious that these were merely side remarks, which do not even amount to considered dicta. He made no mention of his ruling in *Com. v. Wilson,* supra, (9 C. C. 24) wherein the question here involved was squarely before him and he adopted the view that the Act of 1860 only permits the swearing by the foreman of witnesses whose names have been marked on the indictment. Other cases in which he expressed views contrary to the parenthetical observations seized upon by the Commonwealth are *Com. v. Carlucci,* 48 Pa. Superior Ct. 72, and *Com. v. Edmiston,* 30 Pa. Superior Ct. 54.

In addition to what we have said concerning the result of the application of recognized rules of construction to the Act of 1860, there are sound reasons which may well have influenced the legislature in making its original distinction in 1826 with relation to the adminis-

tering of oaths and affirmations to witnesses summoned to appear before grand juries. Under our conception of proper criminal procedure, no grand jury is ever considered an independent body; whether engaged in the exercise of its ordinary functions and powers in considering formal indictments laid before it by a district attorney, or in the performance of the special and occasional duty of investigating matters given it in charge by the court, it is still merely an arm of the court and under its control. In the performance of its ordinary duties it does not determine for itself what witnesses it desires to hear; it finds their names endorsed by a prosecuting officer, under the sanction of his oath of office, upon the indictment laid before it, in which a named defendant is formally accused of having committed a specified crime. Many sound reasons suggest themselves for relaxing the rigid common law rule, that *all* grand jury witnesses must be sworn in the court of which the particular grand jury is a part, *as to such witnesses.* In our opinion that is all the legislature intended to do, or did do, in the enactment of the Acts of 1826 and 1860.

We think there are equally obvious and sound reasons for the continuance by the legislature of the common law rule in those infrequent instances in which a grand jury is directed by the court to conduct an investigation into general accusations of the existence of some evil of public import. The October, 1937, grand jury, before which the perjury charged in the present indictment is alleged to have been committed, was such a grand jury.

An examination of the background of the common law rule may disclose some reasons why the legislature would consider it wise to retain it as respects witnesses about to testify before an investigating grand jury. The rule was not purposeless.

From its inception down to the present time, the grand jury has been vested with powers of a definitely limited character. Its deliberations are strictly con-

fined within prescribed limitations, which it has been the policy of the law to impose in order to protect from vindictive or unwarranted prosecution those accused of criminal offenses. As stated by Judge KING in *Lloyd and Carpenter's Case,* supra, (3 Clark 188, 196), recognized in *McNair's Petition,* 324 Pa. 48, 59, 187 A. 498, as the leading Pennsylvania case on the functions of a grand jury: "...... Grand juries are high public functionaries, standing indifferent between accuser and accused. They are the great security to the citizen against vindictive prosecutions, either by government, or by political partisans, or by private enemies. In their independent action, the persecuted have found the most fearless protectors; and in the records of their doings are to be discovered the noblest stands against the oppression of power, the virulence of malice, and the intemperance of prejudice. These elevated functions do not comport with the position of receiving individual accusations from any source, not preferred before them by the responsible public authorities, and not resting in their own cognizance sufficient to authorize a presentment. Nor should courts give unadvisably aid or countenance to any such innovations."

In the Lloyd case, Judge KING refused the grand jury's request to compel attendance of witnesses and the production of documents to enable it to investigate a charge made against public officials by one of its members. In denying this request, he pointed out that the great power wielded by grand juries is not of such breadth as to permit them on their own motion to originate investigations and seek out violators of the criminal law. He then discussed at length the various ways in which criminal proceedings may be instituted.

In the case of a formal bill laid before an indicting grand jury the endorsement upon it of the names of the witnesses for the Commonwealth necessarily limits the scope of its investigation to the hearing of the witnesses acquainted with the particular accusation in the indict-

ment. This in itself is a sufficient limitation upon the extent of the grand jury's deliberations without any active control by the court over witnesses appearing before it.

As to extraordinary investigations the power of the court to initiate them and their scope are subject to strict limitations: *McNair's Petition,* supra; *Dauphin County Grand Jury Investigation Proceedings (No. 1),* 332 Pa. 289, 2 A. 2d 783. As ruled in those cases, to warrant the institution of such an investigation the court must have definite knowledge from trustworthy sources of criminal acts forming a system of crime, and there must be at least one specific crime charged as a part of the system of related crimes. Moreover, the activities of the grand jury are restricted to the matters entrusted to it by the court in its charge. The safeguards which have been set up around the commence-ment of such investigations would be worthless, if immediately after the investigation has started the court should completely divorce itself from control and supervision over the conduct of the proceedings and permit the grand jury to function without actively guiding the course of the investigation and without controlling its scope by passing upon, and administering oaths to, the witnesses to appear before it. It must be remembered that originally the grand jury functioned in open court and the court actively controlled its deliberations. At a later period, it conducted its deliberations behind closed doors but the court still supervised the extent of its deliberations by virtue of its power to determine what witnesses should appear before it, and being vested with the exclusive authority to swear such witnesses.

The foregoing are some of the reasons which we think support the conclusion reached in the court below to the effect that it was the intent of the legislature to authorize and empower the foreman, or a member, of a grand jury to administer the requisite oaths or affirmations only to witnesses whose names have been "marked" on

a formal indictment. It follows that when a grand jury is engaged in the extraordinary function of investigating matters given it in charge by a court and has no formal bills before it, the witnesses about to be examined by it must be sworn or affirmed by a judge of the court which has directed and is supervising the investigation. In such instances the common law rule is still in full force and effect. The indictment for perjury at No. 649, November Sessions, 1938, was properly quashed.

Order affirmed.

KELLER, P. J., and RHODES, J., dissent.