## Commonwealth v. Rohm & Haas Co.

*John P. Harrington*, for Commonwealth.
*Philip C. Herr*, for defendant.

SHELLEY, J., February 23, 1960. — This matter comes before the court on an appeal by defendant, Rohm & Haas Company, from the denial of its petition for refund of $2,115.32 Pennsylvania selective sales and use tax paid on rentals of railroad tank cars covering the period from March 6, 1956, to December 31, 1956, as determined by the Sales Tax Board of Review, and from the decision of the Board of Finance and Revenue likewise denying the refund and sustaining the decision of the Sales Tax Board of Review.

Under the provisions of the Act of April 22, 1874, P. L. 109, 12 PS §688, the parties have entered into a stipulation for the trial of this case without a jury.

They have also stipulated the facts. We adopt their stipulation as our findings of fact and incorporate the same herein by reference. In the course of our opinion, we will discuss those facts which, in our judgment, are essential to the disposition of this case.

Defendant is a Delaware corporation registered to do business in Pennsylvania and is engaged in the manufacture and sale of chemical products. It has two plants in Pennsylvania and two plants outside Pennsylvania. During the period now under review, to wit, from March 7, 1956, to December 31, 1956, defendant leased 419 different railroad tank cars to deliver its raw materials to its Pennsylvania plants, semi-finished products between its plants inside and outside of Pennsylvania, and finished products to its customers inside and outside of Pennsylvania. These leased railroad tank cars traveled approximately 7,500,000 miles in the year 1956, making said deliveries over the lines of the major railroad common carriers serving defendant and its customers. Defendant has no financial interest whatever in the railroad common carriers used by it. The use tax was imposed upon defendant on that portion of the rentals paid for use of the railroad tank cars in making "intrastate" deliveries. The

rentals paid during the period of from March 7, 1956, to December 31, 1956, amount to $70,510.75, with a resulting tax of $2,115.32. Defendant paid the tax, and it claimed a refund thereof. The refund was denied by the Sales Tax Board of Review and by the Board of Finance and Revenue.

The sole issue in this appeal is whether the railroad tank cars leased by defendant come within the definition of "tangible personal property" of the Selective Sales and Use Tax Act of March 6, 1956, P. L. 1228, 72 PS §3403-1, as set out in paragraph 2(1) (5), which provides, in pertinent part, for business, industrial, professional and commercial supplies, equipment and machines of all types.

The Commonwealth contends the statute includes these railroad tank cars within the definition of tangible personal property as contained in the Selective Sales and Use Tax Act of 1956.

The tax involved in this case is a selective sales and use tax, not a general sales and use tax. There was a general sales tax effective in the Commonwealth which expired on August 31, 1955: Consumers Sales Tax Act of July 13, 1953, P. L. 389, 72 PS §3407-101, and Use and Storage Tax Act of July 13, 1953, P. L. 377, 72 PS §3406-101. In 1956 the legislature turned to a selective type of tax: The Selective Sales and Use Tax Act of March 6, 1956, P. L. 1228, 72 PS §3403-1. supra. The distinction between a general sales and use tax and a selective sales and use tax is an important consideration in this matter. In a selective tax there is no presumption that all tangible personal property is taxable unless specifically exempt. If an item of property is specific or described with particularity it is taxable under a selective act. Since the legislature apparently intended to abandon a general sales and use tax and replace it with a selective sales

and use tax, the Act of 1956 must be interpreted to give effect to that intent.

Article I, sec. 2, of the act contains the definition of the various words, terms and phrases used in the act. Subsection (1) of section 2 sets forth 17 categories of "tangible personal property" which were "selected" for taxation under the act. The first category sets forth in section 2, subsec. (1) (1) "Motor vehicles, trailers, semi-trailers and aircraft and all accessories, supplies, parts, lubricants and equipment used in the maintenance, operation or repair of such motor vehicles, trailers, semi-trailers and aircraft." This subsection makes only two kinds of transportation equipment specifically the subject of taxation, i.e., motor vehicles and aircraft.

Section 203 (j) (1) (2), 72 PS §3403-203, refers to another kind of transportation, i.e., vessels designated for commercial use of registered tonnage of 50 tons or more when produced by the builders thereof upon special order of the purchaser and such vessels are excluded from the tax. Section 2 (1) (11), 72 PS §3403-2, taxes pleasure boats and equipment parts, etc. However, pleasure boats are not in the category of transportation but rather in the category of sports or recreation.

The act refers specifically to three kinds of transportation, i.e., motor vehicles, aircraft and commercial vessels. Nowhere does it, by direct reference or otherwise, refer to railroad transportation.

"Motor vehicles" in section 101 (70) of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §601 (70), specifically excluded vehicles moving upon or guided by track or trolley. The Department of Revenue recognized this omission in the Act of 1956 when it adopted its rental regulation: T. R. 102 (b). There, while providing that rentals of motor vehicles, airplanes and boats were subject to tax, it did not include devices moving upon stationary tracks or rails.

The use of the tank cars which are the subject matter in this controversy must fall within one of two categories, either (1) transportation or (2) industrial equipment. 21 Words and Phrases 225, defines industrial "as relating to manufacturers or to the product of industry or labor." Funk and Wagnall's dictionary, page 1255, defines "industrial" as "of or pertaining to industry or labor, denoting the processes or products of manufacture or commercial production in general." "Equipment in industry" is defined in Webster's New International dictionary, 2nd ed., 1956, p. 865, as "physical facilities available for production, including buildings, machines, tools, etc." 14A Words and Phrases 542 suggests that although often used in widely different senses, the word "equipment" is more nearly synonymous with instrumentality than is the word "facility," which, as ordinarily used, is not as narrow a term as "instrumentality."

Of the 17 categories or paragraphs of section 2(1) of the act, 15 of the group are quite specific. Only categories 4 and 5 are stated in more general terms so as to be broader in scope. Thus, category 4 deals with "furnishings, appliances, supplies, fittings, ornaments, furniture, equipment and accessories for homes, business, industrial or commercial use for indoor and outdoor purposes." Category 5 covers business, industrial, professional, commercial supplies, equipment and machines of all types including parts and accessories purchased for or used in connection therewith. Categories 4 and 5 taken together could be construed so broadly as to cover all the specific items set out in the other 15 categories. Under the principles of statutory interpretations, however, no part of the statute is to be so construed as to make other parts unnecessary: Commonwealth v. Hubbs, 137 Pa. Superior Ct. 229 (1939); Commonwealth v. Mack Bros. Motor Car Company, 359 Pa. 639 (1948); Statutory Construction Act of 1937, sec. 51, 46 PS §551. It would fol-

low, therefore, that neither category 4 or 5 may properly be construed so broadly as to include items either specifically included in, or expressly or by necessary implication excluded from, other narrow and more specific categories.

If railroad tank cars are "industrial equipment" under paragraph (5), it could be argued that clothing is "supplies" or "equipment . . . for home, business, industrial, or commercial use, for indoor or outdoor purposes" under paragraph (4) and that groceries are "supplies . . . for home . . . use" under that paragraph. Yet clothing is not to be included within those terms, because certain kinds of clothing are expressly described in paragraph (2), namely, "Formal day or evening apparel and articles made of fur" etc. Therefore, other kinds of clothing are impliedly excluded from taxation. The Sales Tax Review Board itself so held in the AAA Uniform Service Co., Inc., Sales Tax Board of Review case No. A-000150, CCH State Tax Reporter, vol. 2, par. 60-114.702.

Groceries are not to be included under paragraph (4) as "supplies . . . for home . . . use," because certain specific types of food are expressly described in paragraph (17), namely, "Food and beverages" when purchased for consumption on the premises "from persons engaged in the business of catering, or . . . from persons engaged in the business of operating restaurants, cafes, lunch counters, private and social clubs, taverns, dining cars, hotels and other eating places." All other types of food are thereby impliedly excluded from taxation. The sales tax authorities must recognize this exclusion for no attempt has been made to collect tax on the sale of groceries as "supplies for home use."

By the same token, railroad tank cars, which are equipment used in the transportation of property, are not to be included under the term "industrial equipment" in paragraph (5). Since certain types of trans-

portation equipment are expressly described in paragraph (1), namely, "Motor vehicles, trailers, semi-trailers and aircraft," all other types of transportation equipment necessarily are impliedly excluded from taxation except those specifically referred to in other sections of the act, i.e., commercial vessels or pleasure boats.

If the legislature had intended the general words in paragraphs (4) and (5) to be used in their unrestricted sense so as to be all-inclusive, there would have been "no object in particular enumeration" (Alvord v. State Tax Commission, 69 Ariz. 287, 213 P. 2d 363, at 367 (1950), and "it would have made no mention of the particular classes": In re Bush Terminal Co., 93 F. 2d 659, 660 (2d Cir., 1938). But since there was "enumeration" of certain selected items of tangible personal property, in order to give effect to all other paragraphs and make none superfluous, paragraphs (4) and (5) must be given a restricted interpretation which excludes all items enumerated in other paragraphs and also excludes all other items which, because of their similarity to those specifically named, would have been included in the other paragraphs with the items of like kind, had it been intended to tax them. "General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment," and "Specific terms prevail over the general in the same or another statute which otherwise might be controlling": D. Ginsberg & Sons, Inc., v. Popkin, 285 U. S. 204, at 208 (1932).

The railroad tank cars leased by defendant during this period in making intrastate deliveries were transported over railroad lines of the major common carriers serving defendant's plants and those of its customers. Defendant has no financial interest, nor control, in whole or in part, in any of said railroad

common carriers. In an average year, the leased railroad tank cars used by defendant to receive and/or make deliveries to or from its plants travel approximately 7,500,000 miles.

Railroad equipment is defined in Words and Phrases, vol. 14A, page 548, as follows:

"Equipment as applied to transportation includes the necessary adjuncts of railroading, the rolling stock and other movable property used in operating the railroad as cars and locomotives."

Railroad rolling stock is not specifically designated as an item of personal tangible property to be taxed but rather is excluded, while other transportation equipment is made the subject of the tax.

It cannot be said that railroad equipment comes within the scope of the act because a statute must be so construed as to give effect to all its parts in order that no part may be superfluous; the express mention of one thing in a statute is the implied exclusion of things not mentioned. A specific provision in a statute controls over a general principle.

It is well settled in Pennsylvania that tax statutes must be strictly construed, and any doubt should be resolved against the government and in favor of the citizens. The principle that taxing statutes are to be narrowly and strictly construed has been made a part of the statutory law in Pennsylvania: Statutory Construction Act of 1937, sec. 58(3), 46 PS §558(3). However, the principle has a considerably older history. For years it has found sanction in decisional law not only in Pennsylvania but in many other jurisdictions as well: Gould v. Gould, 245 U. S. 151, 153 (1917) ; United States v. Merriam, 263 U. S. 179, 187, 188 (1923).

In Pennsylvania, our courts have given expression to the principle of strict construction in connection with a great variety of tax statutes. The Supreme

Court in the case of Commonwealth v. Pennsylvania Water & Power Co., 271 Pa. 456, at pages 458 and 459 (1921), decided that a statute taxing the gross receipts of electric light companies cannot be extended to tax water companies which developed electric power for commercial purposes by water power. In Paper Products Company v. Pittsburgh, 391 Pa. 87 (1958), and Fischer v. Pittsburgh, 383 Pa. 138 (1955), the principle of strict construction of taxing statutes has also been applied to income tax statutes (Commonwealth v. Westinghouse Electric Corp., 65 Dauph. 60 (1953)), to the personal property taxes (Callery's Appeal, 272 Pa. 255 (1922); Commonwealth v. Phila. Rapid Transit Co., 287 Pa. 190 (1926)), and to transfer inheritance tax cases: Husband's Estate, 316 Pa. 361, 369 (1934); Dorrance's Estate, 333 Pa. 162, 171 (1939); Arbuckle's Estate, 324 Pa. 501, 505 (1936).

The Supreme Court of Arkansas held that manufactured gas was not taxable under a Sales Tax Act which taxed all "retail sales of electric power and light, natural gas, water, telephone use and messages and telegrams": Wiseman v. Arkansas Utilities Co., 191 Ark. 854, 88 S. W. 2d 81 (1935).

It would seem that if the legislature intended the act to apply to a category as large as railroad rolling stock, it would have specifically so provided.

We accordingly find that the use of the tank cars by defendant which are the subject of these proceedings are not included within the definition of "tangible personal property" as set forth in article I, sec. 2, subsec. (1) of the Pennsylvania Selective Sales and Use Tax Act of 1956.

*Order*

And now, February 23, 1960, the appeal of defendant, Rohm & Haas Company, is sustained and judgment is hereby directed to be entered against the Commonwealth of Pennsylvania and in favor of Rohm

747

& Haas Company, defendant, unless exceptions be filed within the time allowed by law. The prothonotary shall forthwith notify the parties hereto or their counsel.